PRESENT, HON. STEPHEN ROYCE,
    " SAMUEL S. PHELPS, } *Assistant Justices.*
    " JACOB COLLAMER,
    " ISAAC F. REDFIELD,

HANNAH CORLISS *vs.* GEORGE W. CORLISS.

When two deeds of the same land are executed by A to B, at or near the same time, for the same consideration, and for the same purpose, of the same tenor, but of different dates, and before either deed is recorded, or any further conveyance made or lien created, B gives up to A the deed last executed, to be cancelled, the other deed is not operative between the parties, without some new agreement to give it effect,—something tantamount to a new delivery. But if A takes away and destroys said last executed deed, without the consent or authority of B, the other deed shall be allowed to take effect, and be recorded.

Notice of an unrecorded deed is equivalent, as against those having such notice, to a record of the deed.

When a division is ordered by a court of probate between the estate of a testator or intestate, and the real estate of another person, in pursuance of the 84th section of the probate act of A. D. 1821, if the committee appointed to make such division give the notice to such person, which is required by that section, and afterwards proceed to make the division, their report, when accepted by said court, if no appeal is taken, becomes binding and conclusive upon such person, though the previous notice required by the second proviso to that section be omitted.

Ejectment for ten acres of land in Bradford, claimed by the plaintiff as dower in the estate of Jacob Corliss, her late husband.— Plea, *the general issue.*

The cause was submitted to the jury on the following testimony:

It was conceded that both parties derived title and claimed under Emerson Corliss.

The plaintiff, in support of the issue on her part, read to the jury a deed from Emerson Corliss to her late husband, Jacob Corliss, dated December 11th, 1828, acknowledged the same day, and re-

ORANGE,
February
1836.

Corliss
vs.
Corliss.

corded the 19th of May, 1831, conveying to said Jacob Corliss one half of the farm in Bradford, on which the said Emerson Corliss then lived, including the land in dispute. She also proved the defendant in possession.

In further support of said issue on the part of the plaintiff, she offered to read in evidence to the jury, a copy of the records of the probate court, for the district of Bradford, of the assignment of the land in dispute, to her as her dower,—a copy of the records of the prior proceedings of said court, and the original warrant to the committee of division.—To the admission of all which, the defendant objected, and offered to prove by the judge of probate and register, that before the issuing of the order of division and assignment of dower, no notice in fact was ever given to the defendant, or any others interested in said division.

It was conceded that the defendant then owned one undivided half of said farm, and that he was then in actual possession of the same. Which evidence of the judge and register aforesaid, was rejected by the court, and the objection to the probate records and proceedings overruled, and said records admitted.—To which rejection and admission, the defendant excepted.

The defendant, in support of the issue on his part, read in evidence to the jury a deed duly executed, from Emerson Corliss to himself, dated May 13th, 1826, acknowledged on the 14th of the same month, and recorded on the 16th of the same month, conveying the undivided half of said farm.

The defendant then read in evidence to the jury another deed from Emerson Corliss to himself, of one undivided half of the farm said Emerson Corliss then lived on, dated April 6th, 1831, acknowledged the same day, and recorded the 9th of April, A. D. 1831, duly executed, and including the land in question.

The defendant, in farther support of said issue on his part, adduced evidence tending to prove, that said Emerson Corliss was, on the execution of his deed to defendant, the 6th of April, 1831, and for more than twenty years before had been, in actual possession of the premises.

The defendant, in farther support of the issue on his part, read in evidence to the jury, a mortgage deed of said premises, from himself to the said Emerson Corliss, dated April 6th, 1831, acknowledged the same day, and recorded April 6th, 1831, conditioned as follows:

" Provided nevertheless, and the condition of this deed is such, that if the said Geo. W. Corliss shall well and truly pay or cause

Orange,
February,
1836

Corliss
vs.
Corliss.

to be paid at the decease of the said Emerson Corliss and his wife Mehitabel Corliss, the following sums, to wit: twenty-five dollars to Mehitabel Corliss, fifty dollars to Harriet B. Powers, and twenty-five dollars to Milo Jackson Corliss, son of said Geo. W. Corliss, which sums are to be paid in good saleable neat stock, and that said Emerson Corliss shall have possession of the above premises during his natural life, then, and in that case, this deed to be null and void—otherwise, to be and remain in full force and virtue."

The plaintiff, in farther support of the issue on her part, introduced evidence tending to prove, that on the 11th of December, A. D. 1828, the deed from Emerson Corliss of that date was executed, acknowledged, and delivered to said Jacob Corliss ; and that soon after, (the same or next day,) another deed of precisely the same tenor, but dated May 13th, A. D. 1826, was duly executed by said Emerson Corliss to the said Jacob, for the purpose of enabling the said Emerson Corliss to procure a pension, as a revolutinary soldier ; and also, testimony tending to prove, that the defendant had notice of the existence of both these deeds, at or about the time they were executed, and at other times, before he received his deed. That the said Jacob, in two instances, offered to mortgage the lands deeded him by Emerson Corliss, to secure debts he was owing; but no mortgage was given. No evidence was given tending to prove that these offers to mortgage were known to the defendant, or Emerson Corliss. The plaintiff also, to explain the fact of the premises being suffered to remain in said Emerson's possession, and said deeds unrecorded—offered evidence tending to prove, that just before the deed under which plantiff claimed was recorded, the plaintiff got the witness to inquire of Emerson Corliss if he could give the $200, as had been talked of. Witness had understood they were offended at the said Emerson's taking the deed, and he was to give $200 for so doing ;— when the said Emerson telling the witness to mind his own business, the said administratrix soon after caused the said deed to be recorded, and the premises to be appraised and inventoried.

The defendant introduced evidence tending to prove, that both of the aforesaid deeds from Emerson Corliss to Jacob Corliss were made on the same consideration, at or near the same time, for the same purpose, and on the same trust, and so understood between the parties: that after the deed of 1828 was made, something was said about altering the date of it to 1826; but it was thought best to make a new deed, and date it in 1826, and a new one was made, and that this was done the better to enable the said Emerson Cor-

ORANGE,
*February,*
1836
Corliss
*vs.*
Corliss.

liss to get his pension; and that Jacob Corliss, in his life-time, never took possession of said land, under said deeds, or claimed to own the same; and that the plaintiff, who was administratrix on the estate of the said Jacob, did not inventory said land as belonging to the estate of the said Jacob, or take any notice of said land, as a part of the said Jacob's estate : That when the plaintiff presented her final account as administratrix for settlement, which was about the 19th of May, A. D. 1831, she procured said deed from Emerson Corliss to Jacob Corliss recorded : That Jacob Corliss died with a lingering disease, in October, 1830: That in June, A. D. 1830, Jacob Corliss, then being confined to his house, with the disease with which he died, gave up to Emerson Corliss the deed dated 13th May, A. D. 1826, to be cancelled, and it was cancelled; and the said George W. Corliss saw it in the said Emerson's possession, immediately after it was taken up, and saw it burned; he, the said Emerson, still remaining in possession of the premises, on the 6th day of April, A. D. 1831, executed the deed before mentioned to the defendant.

The plaintiff also introduced evidence tending to prove, that the said Emerson fraudulently obtained the said deed of May 1826, from the wife of said Jacob, and carried it off and destroyed it, without consent of the said Jacob's wife, and without the consent or knowledge of the said Jacob.

Whereupon, the counsel for the defendant requested the court to charge the jury, first, that if they believed that the two deeds, to wit, the deeds from Emerson Corliss to Jacob Corliss, one dated May 1826, and the other in December, 1828, were executed upon the same consideration, and for the same purpose, and upon the same trust, and so understood between the parties, the giving up of the deed of 1826, by Jacob Corliss to Emerson Corliss, to be cancelled, placed the title of the land in question in Emerson Corliss; and that the deed of 1828, remaining in Jacob's possession, was a mere nullity, and cannot be used to support the plaintiff's title : Secondly, that if the jury find that the said George W. Corliss had notice of the deeds to Jacob Corliss, about the time they were executed, still he is entitled to recover in this case, if the jury find that said Jacob Corliss did not in his life-time record his said deed or deeds, or take possession of said land, or claim title to the same ;. and that the said Hannah, as administratrix on his estate, did not inventory said land, or claim the same as belonging to said estate, until after the defendant's deed was executed, delivered and recorded : Thirdly, that from the length of time the deeds

ORANEE,
February,
1836.

Corliss
vs.
Corliss.

to Jacob Corliss remained unrecorded, connected with the fact that no possession of the land was taken, or claimed by virtue of said deeds, the defendant might well presume either that they had been cancelled, or that the estate had been re-conveyed, or, that for some cause, they were invalid, and so understood by the parties : Fourthly, If the jury find that the defendant had notice of the execution of the two deeds to Jacob Corliss, when he took his deed, and notice also that they were given for the same consideration, and for the same purpose, and upon the same trust, and that the deed of 1826 had been by the said Jacob given up to be cancelled, before he took his deed, he is entitled to recover in this suit. And if he had notice of only one deed, and knew that that had been given up to be cancelled, before he took his deed, he is entitled to recover.

Whereupon, the court charged the jury as *first* requested by the counsel for the defendant, but refused to charge as *secondly*, *thirdly* and *fourthly* requested ; but did give in charge, among other things, the following, viz : As the defendan thas the eldest record title, the jury will first inquire whether defendant had notice of the existence of the plaintiff's deed of December 11, 1828, before he took his deed of April 6th, 1831 : If the jury are not satisfied that defendant had such notice, the defendant will be entitled to a verdict : If the jury are satisfied that the defendant had such notice, their next inquiry would be, whether the deed of May 13th, 1836, from Emerson Corliss to Jacob Corliss, was given up to be cancelled, by Jacob Corliss, or by his authority : If the jury find it was not so delivered up, then the plaintiff will be entitled to recover, if the jury also find that defendant had notice of said deed of December 11th, 1828 ; but if the jury find that said deed of May 13th, 1826, was given up to be cancelled, as aforesaid, then it will be necessary for them to inquire whether both deeds, that is, the deed of May 13th, 1826, and that of December 11th, 1828, were given for the same cause, and with the same intent ; and if the jury find that they were so given, then the giving up of one of said deeds to be cancelled, would, in law, render the other invalid, unless the jury find that it was the intention of the parties that the one retained and not given up, should be and remain operative and valid ; but the giving up one to be cancelled, unexplained, would render the other void.

With respect to the said Jacob's deeds remaining so long unrecorded, and the said Emerson's continuing in possession of the premises, the court gave in charge to the jury, that these facts did

ORANGE,
*February,*
1836.
───────
Corliss
*vs.*
Corliss.

not, in point of law, render said deeds invalid ; but that they were proper to be considered by the jury, together with the other evidence in the case, with the view of ascertaining whether said deeds were originally void, or whether, if originally valid, they were afterwards given up to be cancelled.

The counsel for defendant excepts to said charge, and to the neglect of the court to charge as requested ; and to the admission and rejection of the testimony before mentioned.

The proceedings of the probate court, which relate to the setting out of dower to the plaintiff, are as follows :

" In Probate Court, holden at Bradford in said District, on the last Tuesday, being the 31st day of May, A. D. 1831—Hannah Corliss, Administratrix on the Estate of Jacob Corliss, late of Bradford, deceased, makes return of the following additional inventory of the estate of said deceased, viz :

" To the Honorable the Court of Probate for the District of Bradford—Hannah Corliss, Administratrix on the Estate of Jacob Corliss, late of Bradford, deceased, represents, That since the return made to this Court by the Committee of Appraisal of the Inventory of the Estate of said deceased, she has discovered the following described Real Estate, belonging to said deceased, not embraced in the Inventory of the Committee, which she now returns to said Court as belonging to said Estate, viz :—Being the same land deeded by Emerson Corliss, by his deed dated the 11th day of December, A. D. 1828, being an undivided moiety or half of about sixty acres of land, on which Emerson Corliss and George W. Corliss now live, in said Bradford.    $450 00
                            " HANNAH CORLISS, *Administratrix.*
    " May 31, 1831.

" Which said return of inventory is accepted and ordered to be recorded.          SIMEON SHORT, *Register.*"

" And in Probate Court, holden as aforesaid at Bradford in said District, on the 31st day of May, A. D. 1831—Hannah *Corliss,* widow of Jacob Corliss, late of said Bradford, deceased, makes application for Dower to be set off to her, out of the Real Estate of her late husband : And it is ordered by said Court, that Dower be set off to her out of said Estate ; and thereupon, Geo. W. Prichard and Andrew B. Peters, Esqs., of said Bradford, are appointed a Committee for that purpose, and a warrant in due form of law issued to them."

" STATE OF VERMONT, ⎱ The Hon. William Spencer, Judge of *Bradford District* ss. ⎰ the Probate of Wills, &c. in said District. To Andrew B. Peters and George W. Prichard, Esqs., of Bradford in said District, all Freeholders——GREETING.

" Pursuant to the power and authority to me given, in and by the laws of the State aforesaid, I do hereby appoint and authorize you

ORANGE,
February,
1836.

Corliss
vs.
Corliss.

a Committee to appraise all the Real Estate whereof Jacob Corliss, late of Bradford aforesaid, &c. deceased, died seized and possessed in said estate, each piece and parcel by itself, at the present true value thereof in lawful money, all in words at length : and if said estate, or any part thereof, be in common, or undivided with the real estate of any other person, you are first to sever and divide the estate of said intestate from the estate with which it lies in common as aforesaid, giving timely notice to all persons interested, to be present if they see cause. When you have perfected your inventory, you are to set off to Hannah Corliss, the said deceased's widow, one full third part of the said estate (so as may be convenient for her) for her dower or thirds, during her natural life ; and what you so set off, you are to describe, by plain and lasting metes and bounds, that so confusion may be prevented upon the reversion of the dower. You are to be under oath faithfully to perform this service ; and when you have performed the same, you are to make return of this warrant, with your doings thereon, into the Probate Office for the District aforesaid, as soon as may be.

"Given under my hand and seal of office, at Bradford, in the District of Bradford, this 31st day of May, A. D. 1831.

"By order of the Judge, SIMEON SHORT, *Register.*"

"STATE OF VERMONT, } *Bradford, October 3d, A. D.* 1831.
Orange County ss. } The above named Andrew B. Peters and George W. Prichard personally appeared, and made oath that they would faithfully perform the services assigned them by the foregoing warrant.

"Before me, JOHN M'DUFFIE,
"*Justice of the Peace.*"

"And in Probate Court, holden at Vershire in said District, on the last Tuesday, being the 25th day of October, A. D. 1831—The Committee heretofore appointed to set off Dower to the widow Hannah Corliss, of Bradford, in said District, out of the Real Estate of her late husband, Jacob Corliss, deceased, make their return, which being accompanied with their warrant, and a certificate of their being duly sworn according to law, is accepted and ordered to be recorded, and is as follows, viz :

"Pursuant to a warrant to us directed by the Hon. the Probate Court for the District of Bradford, we, the subscribers, having been sworn agreeably to the directions of the said warrant, did attend to the duties of our appointment, on Monday, the third day of October, and were shown the farm now in the occupancy of George W. Corliss, and were shown a deed of one half of said farm from Emerson Corliss to Jacob Corliss. We did, on said day, notify said George W. Corliss that we were directed to set off one half of said farm to the estate of said Jacob Corliss, and were by him forbid to enter the premises. We then did appraise the one half of said farm at three hundred seventy-five dollars, and did divide it as follows, to wit : Set off to the estate of Jacob Corliss, twenty-

ORANGE,
February,
1836.

Corliss
vs.
Cor'iss.

one acres of land, on the west side of said farm, and is all of said farm west of a line, beginning, &c.   We set off to Geo. W. Corliss thirty acres, as may be seen in the plan as surveyed by J. M'-Duffie, Esq., and is annexed.   We also set off ten acres on the east side of said farm, as follows :—To Hannah Corliss, the widow of Jacob Corliss, for her dower or third thereof, amounting to the sum of one hundred and twenty-five dollars.

" Dated at Bradford, October 3d, 1831.

" ANDREW  B.  PETERS, }
" GEO.  W.  PRICHARD, }  *Committee.*

" A true record,   Attest,      SIMEON SHORT, *Register.*"

Verdict and judgment having passed for the plaintiff, and the defendant's exceptions having been duly certified and allowed, the the cause was removed into this court.

*Upham for the defendant.*—The first question in this case arises upon the decision of the county court in admitting in evidence a copy of the records of the probate court for the district of Bradford.   This copy of record, we insist, was improperly admitted in evidence to support the issue on the part of the plaintiff.

It is a well-settled rule, and one founded upon the first principles of natural justice, that no proceedings should be had affecting the life, liberty or prosperity of an individual, who has not had notice of such proceedings, and an opportunity to defend himself.—2 Stark. Ev. 977.

The defendant, in this case, complains that proceedings have been had affecting his property, of which he has had no notice; and that such proceedings were admitted in evidence against him upon the trial of this cause in the court below.

The 84th section of the probate act declares, in substance, that when any real estate that is to be assigned to any widow for dower, shall be in common, and undivided with the real estate of any other person, the probate court may order the committee to make such division, to sever and divide the testator's or intestate's estate from the estate with which it lies in common; and such committee shall give timely notice to all persons interested, to be present if they see cause : And such divisions so made and accepted by said court, shall be binding upon all parties.   Then comes the following *proviso,* viz: " That before such order shall issue, it shall be shown to such court, that all persons interested, or their attornies within this state, have been notified of the application for such order.—Stat. 351.

Now it appears from the bill of exceptions, that the order of the

ORANGE,
February,
1836.

Corliss
vs.
Corliss.

probate court for the division of the real estate in queston, issued without any previous notice whatever. And for this reason, the whole record should have been excluded as improper evidence in the case.—*French* vs. *Hoyt*, 6 N. H. Rep. 370—*Rathbun* vs. *Miller*, 6 John. R. 281———vs. *Neilson*, 3 John. R. 474.

In the case of the heirs of *Moses Robinson*, (1 D. Chip. Rep. 357,) the court set aside a decree of the judge of probate, ordering a distribution of certain real estate among the heirs, and also the decree of the judge approving of the said distribution and division, because the heirs to said estate were not notified to appear before the judge and show cause, if any they had, why such order of distribution should not be made. The statute under which the judge proceeded in making the order of distribution in the case last cited, did not direct notice to be given before making the order.—*Smith* vs. *Rice*, 11 Mass. R. 507—*Clapp* vs. *Beardsley*, 1 Aik. R. 168—14 Mass. R. 222.

In the case of *Sally Downing*, decided by this court, in this county, in 1832, a decree of the probate court, assigning her personal property out of her deceased husband's estate, was set aside because it was made without notice to the heirs. The statute requires no notice before the assignment of personal property to a widow. Yet the court ruled, upon general principles, that it was necessary. If the doctrine of the cases cited is sound, a new trial should be granted in this case upon the ground that illegal evidence was admitted in the court below.

Again : We say the record of the probate court should have been excluded, because it did not show a legal division of the real estate in question. It appears from the report, that the plaintiff's dower was not taken from that portion of the land set off to the estate of Jacob Corliss.—*Vide* record of division.

The county court refused to charge the jury as requested by the defendant, and in this we insist there was no error. We were entitled to a charge according to our second request.

Surely, if Jacob Corliss neglected, for the two years he lived after the execution and delivery of the deeds in question, to procure either of them recorded, or to take possession of the land conveyed, or to claim title thereto by virtue of the aforesaid deeds, and his widow, who was administratrix on his estate, neglected to inventory said land, or claim the same as part of her deceased husband's estate, the defendant might safely conclude that the deeds were invalid for some cause, and purchase the land from his father, Em-

ORANGE,
*February,*
1836.

Corl.ss
*vs.*
Corliss·

erson Corliss, and hold against the plaintiff, notwithstanding she subsequently procured the deed to her husband to be recorded.— *Vide Farnsworth* vs. *Childs,* 4 Mass. R. 637—*Priest* vs. *Rice,* 1 Pick. R. 164—*Wendall* vs. *Van Renesselaer,* 1 John. Chan. R. 344—*Croft* vs. *Townsend, Adm'r,* 3 Desau. 225, 230—Amer. Chan. Dig. 216, 36 No.—*Jackson* vs. *Givens· et al.* 8 John. R. 137—*McMechan* vs. *Griffing,* 3 Pick. R. 149—*Cushing* vs. *Hurd,* 4 Pick. R. 253.

The doctrine of the court in *Farnsworth* vs. *Childs,* fully supports the position we have taken in this case. In that case, John Farnsworth deeded the premises to Isaac Farnsworth, on the 11th of June, 1805. The deed was not recorded until October, 1807. James Brazer, who two years afterwards attached the premises as John Farnsworth's property, knew of the execution of the deed, and actually read it, and on the 13th of June, 1805, being a magistrate, took the acknowledgement of it. In June, 1807, John Farnsworth still remaining in possession and occupying the premises, but for Isaac's use, James Brazer and his partner extended an execution on the premises as the property of John Farnsworth, and took possession under their levy. Isaac Farnsworth then brought his action of trespass against Childs, who cut the hay as servant of James Brazer and partner. Ch. J. Parsons, in delivering the opinion of the court, said, "We are willing to construe the words of "the statute liberally, to guard against fraud, but not to the injury "of a second purchaser. If the grantee had entered into posses- "sion, the notice of the prior conveyance must have been consid- "ered as a continuing notice. But where the grantor remains in "possession for a long time, during which the grantee might have "recorded his deed, but does not do it, it would be unreasonable "to defeat the subsequent title of a judgment creditor by imputing "to him fraud ; because he might well presume from the length of "time that the deed had remained unrecorded, either that it was "not *bona fide,* or that it had been *cancelled,* or that the estate "had been *re-conveyed;* and if the first purchaser suffers, it is ow- "ing to his own neglect."

This doctrine, we consider to be sound. And in our *third* request to the county court to charge, we desired the judge so to declare it to the jury ; but he refused.

Our *fourth* request to charge, was also passed over by the county court, without notice.

We now insist that if the defendant had notice of the two deeds from Emerson Corliss to Jacob Corliss, at, or near the time of their

ORANGE,
*February.*
1836

Corliss
*vs.*
Corliss.

execution, and also notice that they were given for the same consideration, and for the same purpose, and upon the same trust, and personal knowledge that the deed dated in 1826 had been given up to be cancelled, before he took his deed, he is entitled to recovery in this action; and the jury, in the court below, should have been so instructed.

*Nutting for the plaintiff.*—Defendant's first exception is to the decision of the court, admitting the probate records containing no evidence of *notice to defendant* of *application* for an order of severance.

This decision of the court ought to be sustained for the following reasons, viz:

The *proviso* of the statute, on which the objection is taken, is merely *directory;* and compliance with a directory statute is not a *sine qua non.*—*Vid.* Stat. p. 350—*Hale* vs. *McLaughlin,* Bray. R. 219, Stat. 207—Marriage Act, Stat. p. 261.

Duty of courts to distinguish between those parts of a statute which constitute its *essence,* and those merely directory.—1 Swift's Dig. 13.

No possible benefit could accrue to the defendant from being notified of the *application* for an *order.* (The court will observe it is " *application* for such *order,*" not application for the appointment of commissioners.)

Defendant could not resist it. The court *must* make the order.—(Stat. p. 350.) *May* means *shall.*—(1 Sw. Dig. 13.) Nor could he have a voice in appointing the commissioners. They are appointed by the court before the *application* for the order of severance.—Stat. p. 350.

A compliance with this *proviso* of the statute would necessarily require some such process as this, viz:

The widow applies for dower.

The court appoint commissioners to set it off.

Those commissioners discover that the estate lies in common with that of some other person.

Those commissioners, or some one else, makes *application* for an *order* of severance.

Those commissioners, or some one else, gives *notice* of such *application* to all interested.

On this notice being shown to the court, no matter how, *order* of severance is made.

The commissioners again give *notice,* and proceed to sever and set off the dower.

ORANGE,
February,
1836.
_____
Corliss
vs.
Corliss.

· Was this process ever adopted? Was it ever thought of? What possible benefit could result from its adoption?

No notice is required by our statute, of the application for an order of severance between heirs or legatees, nor between a widow and heirs or legatees—(Stat. p. 349 and 350.) Why should it be in this?

It will be said the supreme court once decided that such notice *was* necessary.—D. Chip. R. p. 357.

"A hasty decision, whether reported or not, if it will not bear examination, and leads to great and manifest inconveniencies, may be *overruled.*"—4 Vt. R. 433.

This decision of the court ought to be sustained for this, viz :— Such has been the practice ever since the passing of this act : and "*a long uninterrupted practice under a statute, is evidence of its construction.*"—4 Vt. R. 428, *Skinner et al.* vs. *Watson et al.*— Aik. Forms, 345—4 Vt. R. 450.

"The probate court having jurisdiction of the subject matter, the issuing of the order must be considered to have been on regular previous proceedings."—*Collard* vs. *Crane,* Brayt. 19—*Smith, Adm'r,* vs. *Burnham et al.,* 1 Aik. 93—*Leverett* vs. *Harris,* 7 Mass. R. 296.

This statute does not direct *what notice,* nor how it shall be shown to the probate court.

The decree of the probate court ratifying this severance, is a judgment of a court having *competent jurisdiction,* and therefore is conclusive till reversed or annulled.—1 Swift, 752–3–4.

In *Sheldon* vs. *Bush,* (1 Day, 170,) the court decided that "a decree of a probate court is conclusive till disaffirmed on appeal, or set aside in due course of law, and cannot be inquired into collaterally."—3 Dane, 523.

. This defendant was a party to this judgment or decree of the probate court. He was duly notified by the commissioners.—*Vide* Probate Records.

If he was dissatisfied with the decree, he should have appealed : otherwise, the decree is conclusive against him.—Stat. p. 333— 4 Vt. R. 620.

If he was not notified, he might have brought *Audita Quaerela. What benefit would result from excluding this record?*

Defendant's second exception, that the court excluded parol evidence—that no notice of application for an *order* of severance was given to defendant. This evidence was not offered to the jury on

the merits, but to the court on the admission of the probate record; therefore, no cause for setting aside the verdict. It was properly rejected on several grounds.

1. Notice not necessary.

2. The judgment of the probate court unappealed from, could not be attacked collaterally.

3. The evidence offered was of such a nature that the court saw that the witness could not testify.

4. The evidence offered was to *negative* a fact which had not been *averred* nor attempted to be *proved*: therefore, *impertinent.*

Defendant's third exception is to the charge of the court, and the neglect of the court to charge as he had requested. Defendant first complains that the court neglected to charge, that plaintiff's neglect to record the deed and take possession of the land, from December 11th, 1828, to April 6th, 1831, was *per se* sufficient to entitle him to a verdict, and this, as matter of law, independent of any explanation which was or could be made!

Evidence to explain these facts, in this case, Jacob's offer to mortgage the land—His *sickness* and *death*.

Emerson Corliss' proposals to re-purchase of administratrix.

These facts were proper to go to the jury as evidence of fraud; and so the court charged.

Defendant's third request to the court—same in substance as the second, and already answered.

Defendant's fourth request—same as his first, except the latter clause, viz: "If defendant had notice of only one deed, and knew that had been given up to be cancelled before he took his deed, he is entitled to recover." The court so charged in substance and effect.

Defendant contended and proved, that he knew of the deed of May 1826, and saw it burnt; and the court twice expressly charged the jury that unless they find that defendant had notice of the deed of December 1828, they must find for the defendant.

The opinion of the court was delivered by

Royce, J.—The case involves two principal inquiries:—1st, Whether the premises sued for were part of the estate of Jacob Corliss, deceased:—2, Whether they were legally set out to the plaintiff, as dower in that estate.

The first question depends on the deed from Emerson Corliss to the said Jacob Corliss, dated December 11th, A. D. 1828. If that deed was valid and operative betweeen the parties to it, and

Orange,
February,
1836.

Corliss
vs.
Corliss.

49

ORANGE,
*February,*
1836

Corliss
*vs.*
Corliss.

likewise with reference to the defendant, it made a good title in the estate of the grantee. The case discloses several circumstances calculated to excite suspicion as to the intended validity of the deed; such as the occasion on which it was executed, when the main object of the grantor appears to have been, to qualify himself for receiving a pension;—the absence of all proof showing a valuable consideration paid for the conveyance;—the continued possession and enjoyment of the land by the grantor;—the silence of Jacob Corliss as to this newly acquired estate, and his neglect to procure either of his deeds recorded. But it also appears, that Jacob Corliss and the defendant were the two sons of the grantor, who had already deeded one half of his farm to the defendant, and yet retained possession;—that for most of the time, after the execution of said deeds, Jacob Corliss was in feeble and declining health; and that on a few occasions, he manifested a claim to the land, by offering to mortgage it. All these circumstances were proper for the consideration of the jury, when passing upon the original intention of the parties. And as they appear to have been correctly submitted with that view, the verdict has established the fact that an actual conveyance was intended. The jury were further instructed, (in pursuance of our decision in this cause on a former occasion,) that if the deed between the same parties, dated May 13th, A. D. 1826, was executed at, or soon after the time of executing that of December 11th, A. D. 1828, on the same consideration and trust, and for the same purpose; or, in other words, was intended as a substitute for it, the giving up of said deed of A. D. 1826 by Jacob Corliss, to be cancelled, would leave the other deed inoperative, without some new agreement to give it force and effect,—something tantamount to a new delivery of it. But that if Emerson Corliss obtained the deed of A. D. 1826 from the possession of Jacob Corliss without his authority or consent, the deed of A. D. 1828 should be treated as in force against Emerson Corliss, and against the defendant also, provided he had notice of its existence before receiving his deed from Emerson Corliss, dated April 6th, A. D. 1831. Under this charge the jury must have found, that Emerson Corliss possessed himself of the deed of A. D. 1826 wrongfully, or that there was an agreement to set up the deed of A. D. 1828. And as the case makes no mention of any evidence tending to show such agreement, the verdict must be taken to have established the other fact.

ORANGE,
February,
1836.

Corliss
vs.
Corliss.

The deed of A. D. 1823, thus appearing to be operative as against Emerson Corliss, it remains to be considered with reference to the defendant. He seems to have had seasonable and repeated notice that such a deed existed ; and the fact of notice is also conclusively implied in the verdict. But he contends that his deed of A. D. 1831 ought, under the circumstances, to prevail over the deed of A. D. 1828, though he acted with notice. It is insisted that the facts to which I have alluded, and especially the neglect of Jacob Corliss to take possession of the premises conveyed, or to place his deed upon record, furnished a presumption against the validity of his title, upon which the defendant, as a subsequent purchaser, had a right to rely. We have no rule of law which requires a deed to be recorded within any fixed period, or within what would be deemed a reasonable time in reference to other business transactions, to render it effectual as to those who have knowledge of its existence. Neither do we regard a change of possession, in the case of real estate, as legally essential to the safety of the grantee. Still, as great negligence in these respects may become the occasion of deception and injury, some principle of the kind contended for should doubtless be recognized, as a just qualification of that on which the plaintiff proceeds, that notice of an unrecorded deed is equivalent to a record of the deed. As one who purchases with knowledge of a previous conveyance to another is generally chargeable with fraud, so, on the other hand, to give effect to a deed which has long remained unrecorded, may sometimes operate as a fraud, even upon persons having notice of such deed. But since our law has not prescribed the time, nor defined the attending circumstances necessary to render these neglects of the grantee injurious and fraudulent, the court below were clearly justified in refusing to charge upon this point as requested by the defendant's counsel. The question was one of fraud and imposition in fact, and not of presumed or constructive fraud. Unless the conduct of Jacob Corliss was sufficient, under all existing circumstances, to create a reasonable and full belief in the defendant, that the deed of A. D. 1828 never took effect, or that the title under it had become extinguished, the facts embodied in the request could in no way operate to his advantage. And even then, as that deed is found to have been valid between the original parties, and as notice to the defendant was tantamount to a record of the deed, the effect of the evidence would be, rather to show a fraudulent and unjust use of a legal title by the plaintiff, than to invalidate the title itself. Under such cirsumstances, it is usual to resort to a court of equity, which is com-

ORANGE,
February
1836.

Corliss
vs.
Corliss.

petent to set aside or restrain a legal title, when attempted to be enforced in violation of honesty and good faith. It is only in Massachusetts, and other states possessing no court of distinct and superior equity jurisdiction, that I find this particular species of defence sustained at law.

But the facts relied upon were by no means entitled to the influence claimed for them. There is no reason to believe, that the defendant's opinion was materially affected by the continued possession of Emerson Corliss, or by the omission of Jacob Corliss to record his deed. The time was quite too short to justify any fixed conclusion from either of those circumstances. On the contrary, as the defendant had seen the deed of A. D. 1826 in the hands of Emerson Corliss, and had witnessed its destruction, he was probably induced to purchase from mistaken apprehensions as to the manner of getting up that deed, or as to the legal effect of destroying it.

The question, whether the defendant should be regarded as a purchaser for valuable consideration, and as such entitled to impeach the deed of A. D. 1828, as a mere voluntary conveyance, has not been raised in argument, and will therefore be passed without comment.

The result is, that the title to the undivided half of the premises demanded, became perfect in the estate of Jacob Corliss.

The remaining questions in the case arise under the 84th section of the probate act of A. D. 1821.—It is there enacted, "That when any real estate, devised by will, or claimed by heirs, that is required to be divided among legatees, or heirs, or that is to be assigned to any widow for dower, shall be in common, and undivided with the real estate of any other person, the probate court may order the committee appointed to make such division, to sever and divide the testator's or intestate's estate from the estate with which it lies in common ; and such committee shall give timely notice to all persons interested, to be present, if they see cause ; and such division, so made and accepted by such court, shall be binding upon all parties." Then follows a proviso, directing guardians to be appointed for infants, persons non-compos, &c., and agents for persons out of the state, who are interested in either of the estates to be affected. And this is directed to be done before the division is made. The second proviso is as follows : "That before such order shall issue, it shall be shown to such court, that all persons interested, or their attornies within this state, have been notified of the application for such order."

It is contended, as one ground for impeaching the probate pro-

ORANGE,
February,
1836.

Corliss
vs.
Corliss.

ceedings, that a full division between the estate of Jacob Corliss and the defendant was not made, and that the land in question does not appear to have been set to the estate. But we think the report of the committee, rightly construed, furnishes an answer to this objection. That they considered themselves required to make a division of the whole farm, appears very clearly from their notice to the defendant. They commenced by setting off to the defendant thirty acres, being one half of the entire tract to be divided, and then severed to the estate of Jacob Corliss another tract of twenty acres. It is true, that the remaining ten acres are not in terms set to the estate; but they are set to the plaintiff, as the widow of Jacob Corliss, to be held by her as dower. This conclusively shows that they treated the ten acres as severed from the defendant's land, and as part of the estate of Jacob Corliss.

A more important objection arises under the second proviso, above recited. The defendant has a right to allege, that the warrant to the committee was issued without the notice contemplated in that provision. It was apparent to the probate court that dower was to be taken in this form, and that the defendant or Emererson Corliss had an undivided estate in the farm. And though, in terms, the plaintiff's application was merely for dower, and not for a division between the estate and third persons, yet such a division was manifestly necessary, to effect the object of her application. In substance, therefore, it was an application as well for a division with the defendant, as for the setting out of dower. It was a case, in short, within the obvious meaning of that enactment.

The requirement of this preliminary notice was intended to secure to those whose interests were to be affected, an opportunity to appear and be heard in the probate court, as to the legality and expediency of the division, and as to the fitness of the committee. And as this privilege may often be of great benefit, I am not disposed to treat the requirement as merely directory. Nor is the difficulty removed, by simply insisting on the jurisdiction of the probate court over the subject matter, and the consequent conclusiveness of its final decree. For this view of the subject is counteracted by the consideration, that to conclude the rights of a person by any proceeding of a judicial nature, to which he was not a party, and against which he could not defend, is repugnant to the first principles of justice. Notice is so essentially necessary, that without it such proceedings are uniformly held to be void, except in cases where the statute has provided specific means of relief. So far has this principle been carried, that such proceedings have frequent-

ORANGE,
February,
1836.

Corliss
vs.
Corliss.

ly been adjudged void for want of notice, even where none was expressly directed by statute.—*Robinson* vs. *Robinson*, 1 D. Chip. R. 357—*Chase* vs. *Hathaway*, 14 Mass. R. 222.

But though this proviso does not strictly belong to that class of statutory enactments which are merely directory, yet we consider that a failure to comply with it has not rendered these proceedings void. The committee were required by their warrant to give the defendant notice, which they did. This was a notice expressly enjoined by the 84th section, and the defendant acted at his peril in disregarding it. By that notice he became so far a party to the proceeding, that he had a right to attend the committee while making the division, and an opportunity to contest their report. He also had a right, under the 7th section of the act, to appeal from the probate decree accepting the report.—*Shumway* vs. *Shumway*, 2 Vt. R. 339.

It is true he had lost the benefit of the previous notice which the proviso requires, and for that cause might doubtless have procured the whole proceedings vacated on appeal. But having neglected to avail himself of these rights, he ought now to be bound by the decree. He should be considered as having waived all advantage from this defect. Justice and convenience seem to demand this result. It is far better that he should submit to some possible injustice in the division, than be allowed in this collateral manner to avoid it.

                              Judgment of county court affirmed.