WILLIAM HESS AND RACHEL HIS WIFE v. ISAAC COLE.

1. The Orphans' Court in New Jersey is a court of limited, but not of special jurisdiction ; it has jurisdiction over a general class of subjects, and every intendment is to be made in favor of their decrees. And, when made on matters within their jurisdiction, they cannot be impeached collaterally, though unlawful.

2. Service of notice upon a married woman is not service upon her husband, even when she is living separate from him, and the right to be affected is vested in her.

3. The judgment of any court, given without having jurisdiction of the parties, either by actual monition or notice, or such constructive monition or notice as is provided for by law, is a nullity, and will be treated as such, even when brought in question collaterally.

4. If it appear by record that the defendant appeared by attorney, he may disprove the authority of the attorney.

5. A decree of the Orphans' Court setting off dower, where a party whose interests are to be affected by it is not served with notice, as required by law, is void, at least as against such party.

6. When a delay in giving judgment, caused by the court, affects the rights of the parties, the court, when necessary to effect justice, will order the judgment to be entered *nunc pro tunc*, as of the term when the matter was submitted to them.

This argument comes up upon demurrer by the plaintiffs to the plea of defendants.

To the count in ordinary form, the tenant filed the following plea :

And the said I. C., by T. W. M., his attorney, comes and says, that the said William Hess and Rachel G. Hess his wife, who was the wife of Samuel Scull, late of the county of Gloucester, deceased, ought not to have any other or further dower in the said tenements and premises in the said declaration mentioned, with the appurtenances, by the endowment of the said Samuel Scull, because, he says, that heretofore, to wit, at the term of December of the Orphans' Court in and for the said county of Gloucester, in the year 1840, William N. Jeffers, who had become and then was the owner of two equal undivided third parts of the said tenements and premises in said declaration mentioned, and, as such owner, represented two of the heirs-at-law of the said S. S., deceased, for the purpose of assigning and setting off, or having assigned and set off to the said Rachel her dower in the lands and real

estate in said county whereof the said S. S., her late husband, died seized, as he was required by law to do, presented his petition in writing to the judges of the said Orphans' Court, praying that three discreet and impartial freeholders might be appointed by the said court to assign to the said Rachel her dower in the lands and real estate situate in the city of Camden, in the said county of G. (now in the county of Camden), whereof the said S. S. died seized, according to the form of the statute in such case made and provided ; and he, the said Isaac Cole, avers that twenty days' notice in writing of the making of the said application for the appointment of such commissioners as aforesaid was duly served upon the said Rachel in her own right, and also upon her, the said Rachel, as the guardian of Rebecca Jane Scull, who was one of the children and heirs-at-law of said S. S., and the owner of the remaining one equal undivided third part of said tenements and premises, and was at the time of such application as aforesaid a minor, and the ward of the said Rachel.

And the said Isaac Cole further says, that the judges of the said Orphans' Court, at the same term of December aforesaid, to wit, on the twelfth day of the said month of December, did order that R. F., J. K. C., and I. H., three discreet and disinterested freeholders in the said county of G., be, and they were by the order of the said court, appointed commissioners to admeasure and set off one third part of the lands and real estate in the city of Camden, in the county of G. aforesaid, (now in said county of Camden) whereof the said S. S. died seized, as the dower of her, the said Rachel ; and the said court did, in and by said order, direct the said commissioners that they make a full report of all their proceedings, with the distances and the courses of the lands so assigned and allotted by them to her, the said Rachel, for her dower, and the amount of their charges to the said court, at the next or subsequent term thereof, according to the form of the statute in such case made and provided.

And the said Isaac Cole further says, that the said R. F., J. K. C., and I. H., the said commissioners appointed as aforesaid, afterward, to wit, on the 15th day of January, in the year 1841,

were severally sworn, according to law, faithfully, impartially, and honestly to execute the trust reposed in them as such commissioners as aforesaid; and, being so sworn as aforesaid, the said commissioners afterwards, to wit, on the same day and year last aforesaid, proceeded to examine, and did examine the land and real estate of which the said S. S. died seized, situate in the said county of G., and did admeasure and set off to the said Rachel the one third part thereof for her dower therein, to wit, a part of all that brick dwelling house, lot of land and premises, situate in the said city of Camden, &c., (describing the premises). And the particular description of the part and portion of the said lands and premises so assigned and allotted by them, the said commissioners, to the said Rachel G. Hess are as follows, that is to say: the parlor in the first story of the aforesaid brick dwelling house between the front parlor and the kitchen, the two rooms in the second story next to Plum and Front streets, one room in the garret next to Plum street in the south corner of the house, and the whole of the cellar under the kitchen, together with the privilege of using the entry and stairways, the pump, outhouses, yard, and all the avenues necessarily connected with the said apartments within the above mentioned boundaries.

And the said Isaac Cole further says, that the said commissioners, at the term of March, in the year last aforesaid, made a full report in writing to the said Orphans' Court of the said county of G. of all their proceedings, with the distances and courses of the lands so assigned and allotted by them to the said Rachel for her dower as aforesaid; and the said report and proceedings were then and there inspected by the said court, and, no person objecting thereto, the said court did then and there order that the said proceedings and report of the said commissioners be approved and confirmed by the said court, and further did order that they be recorded by the surrogate, pursuant to the statute in such case made and provided.

And he, the said I. C., further says, that at the time of the service of the said notice upon the said Rachel, as aforesaid, of the said application to the said Orphans' Court for the appointment of the said commissioners, the said Rachel was liv-

ing separate and apart from the said William Hess, and acting as a *feme sole;* that the said William Hess was not at that time, nor has he been at any time since, resident in the said state of New Jersey, but was resident in some part or place unknown; and that previous to the service of the said notice the said William Hess had deserted the said Rachel, and had voluntarily and intentionally abandoned all his marital rights and privileges, and that such desertion and abandonment has been continued and persevered in by the said William up to the time of the commencement of this suit.

And the said I. C. further says, that immediately after the said assignment of the dower aforesaid, by the commissioners aforesaid, to the said Rachel, she, the said Rachel, took possession of the said premises so assigned and allotted to her for her dower in the lands and real estate whereof the said Samuel Scull died seized, situate in the said county of G., and has continued to possess and enjoy the same without let or interruption up to the time of the commencement of this action, and still doth possess and enjoy the same fully.

And the said I. C. further says, that the said tenements and premises in the said declaration mentioned are part and parcel of the lands and real estate whereof the said S. S. died seized, situate in the said county of G. aforesaid, (now in the said county of Camden) wherein and of which the said dower was allotted, admeasured, and set off by the said commissioners as aforesaid to the said Rachel, for her dower in the same.

And the said I. C. further says, that afterwards, to wit, on the — day of ——, in the year of our Lord 1840, the said W. N. J. and C., his wife, sold and conveyed to him, the said Isaac Cole, by deed of bargain and sale duly executed under their hands and seals, and by them acknowledged in due form of law, the said tenements and premises in the said declaration mentioned.

All which he, the said I. C., is ready to verify; wherefore he prays judgment if the said W. H. and Rachel his wife (who was the wife of the said Samuel Scull, deceased,) ought to have any other or further dower of the said tenements and premises in the said declaration mentioned, with the appurte-

nances, by the endowment of the said S. S., formerly her husband, &c. To this plea the demandants filed a general demurrer.

Argued January term, 1851, before the CHIEF JUSTICE, and CARPENTER and RANDOLPH, Justices.

*Browning,* for demandants; *Mulford,* for tenant.

In support of the demurrer it was urged—1st, that it does not appear by the plea that Jeffers, who applied to the Orphans' Court, was a purchaser. It does not appear how he became the owner of two-thirds of the premises. It is only the widow, or heir or purchaser, who is authorized to make application to set off dower. *Elm. Dig.* 145, 146, *pl.* 15, 24. See act 1846, *Rev. Stat.* 75, § 17. An heir can apply *to* have dower assigned on all the land of which the husband died seized, the purchaser, only of land which he holds by purchase.

2. It is not averred how notice of the application was served. The act states how such notice must be served. *Elm. Dig.* 145, *pl.* 16; act of 1820, *Rev. Laws* 678, § 3.

3. It does not appear that such notice was served upon all the parties interested. It is not averred that it was served on the minor.

The notice served on the guardian, who was a married woman, was a nullity. Her powers as guardian had devolved on her husband. *Field* v. *Torrey,* 7 *Vermont* 372; 2 *U. S. Dig.* 484, *Toller's Executors* 241, (*Ed.* 1829). Notice ought to have been served on both.

4. There is no averment of notice to Hess, the husband, in whom, by marriage, the legal right of the wife in the premises had become vested. Notice, actual or constructive, is the foundation of every judicial proceeding; here, the notice on the wife was a nullity, and the Orphans' Court had no jurisdiction.

The CHIEF JUSTICE delivered the opinion of the court.

To an action of dower *unde nihil habet* the defendant pleads an assignment of dower by commissioners appointed by the Orphans' Court of the county of Gloucester, under the provisions of the statute, and a decree thereon. The plea sets out with particularity the proceedings in the Orphans' Court upon

which the decree was founded. To this plea there is a general demurrer.

In support of the demurrer, the plaintiff relies upon a variety of particulars, in which the proceedings of the Orphans' Court, as they are set forth in the plea, are not in conformity with the requirements of the statute upon which the proceedings are founded. The argument in support of most of these objections proceeds upon the ground that the Orphans' Court is a tribunal of limited or special jurisdiction; that in the assignment of dower it exercises a special statutory authority, and that unless its proceedings are in strict compliance with the provisions of the statute, the decree founded upon those proceedings is null and void. Unless this position be sound, it is clear that the decree, while it remains in force, cannot be avoided in a collateral way for mere irregularities.

The Orphans' Court, as established in this state, is not a tribunal of general jurisdiction. Its jurisdiction does not extend to all persons nor to every subject matter. In this sense its jurisdiction is limited. And in the same sense the courts for the trial of small causes, the Court of Common Pleas, and even the Circuit Court of the United States, are courts of limited jurisdiction. But they are not, in the technical sense of the term, inferior courts or courts of special jurisdiction, whose proceedings are subject to the narrowest rules of construction, and whose judgments will be deemed invalid for every irregularity apparent in their proceedings. In like manner, the jurisdiction of the Orphans' Court, though limited is not special. It does not exercise a mere delegated authority for special purposes. It is a regularly constituted tribunal of justice, with broad and comprehensive powers, operating upon great and varied interests, and regulated by well settled principles. Its decrees upon all subjects within the scope of its jurisdiction are entitled to every presumption in favor of their regularity that the judgments of this court are entitled to. While they remain in force they are equally binding. They cannot be avoided in a collateral way, but must be regarded as valid until reversed by due course of law.

These principles were expressly sanctioned by this court in

VOL. III                                    H

*Den ex dem. Obert* v. *Hammel*, 3 *Harr.* 73, and the same principle, as applied to Orphans' Courts and Courts of Probate, have been recognised in several of our sister states. In *Den* v. *O'Hanlon*, 1 *Zab.* 582, the Court of Errors and Appeals held unanimously (counsel being stopped in support of the position) that the decree of the Orphans' Court, on a matter within their jurisdiction, is conclusive, and cannot be impeached when brought in question collaterally, though irregular and unlawful.

This consideration disposes of all the objections relied upon in support of the demurrer which affect merely the regularity or legality of the proceedings before the Orphans' Court. However valid these exceptions might prove, if the proceedings complained of were regularly brought into this court for review, they cannot be taken advantage of in a collateral way while the decree remains in force. To avail the plaintiffs upon this demurrer, it must appear that the decree of the Orphans' Court is void, and the assignment of dower by virtue thereof a nullity.

The last reason relied upon in support of the demurrer is, that no notice was given to William Hess, the plaintiff in this suit, of application to the Orphans' Court that he was no party to the proceedings before that court, and that, so far at least as his rights are affected, the proceedings and decree are inoperative and void.

It appears by the plea that the proceedings before the Orphans' Court for the assignment of dower were instituted upon the petition of a purchaser of the real estate in question; that notice of the application, pursuant to the requirements of the statute, was given to Rachel G. Hess, the dowress; that at the time of the application she was married to her present husband, William Hess, (who with his wife are plaintiffs in this suit), and that notice was given to her of the application. The plea further states, by way of excuse for want of notice to the husband, that the said Rachel G. Hess, at the time of the service of the notice, was living separate and apart from the said William Hess, and acting as a *feme sole;* that the said William Hess was not at that time, nor has he been at any time since, a resident of the state of New Jersey, but was resident in some

part or place unknown; and that previous to the service of the notice, the said William Hess had deserted the said Rachel, and had voluntarily abandoned his marital rights.

The statute regulating the proceedings in the Orphans' Court for the assignment of dower requires that the party petitioning shall give twenty days' notice to the other *person or persons interested.* The husband of the dowress was manifestly a person interested within the contemplation of the statute. His interest in his wife's land became vested upon his marriage, and none of the facts stated in the plea tend in the least to divest his title. He was then entitled to notice by the express provision of the statute. His rights were to be concluded by the decree. Upon the clearest principles of justice, he was entitled to an opportunity of being heard. It needs no argument to prove that the service of a notice, or of any judicial process whatever upon a *feme covert,* where the husband's rights are concerned is a mere nullity. It is no notice to the husband. The wife is never recognised as the agent of the husband for such purpose, unless by force of express statutory authority. There was then no notice to the husband, express or implied, of the application to the Orphans' Court. He was in no wise a party to those proceedings. It remains only to inquire whether this want of notice is a mere irregularity, or whether it affects the jurisdiction of the court, and renders their proceedings null and void.

By the strict rules of the common law, it was necessary in every suit not only that the defendant should be served with process, but that his appearance to the action should be effected. Every student is familiar with the cumbrous machinery and complicated process by which the courts sought to compel the *appearance* of the defendant. He is familiar, also, with the principle, that if the defendant was contumacious, and refused to appear to a mere civil action, the proceedings were at an end. No judgment could be rendered. Every common law record shows upon its face that the defendant was either in custody, or was summoned or attached to answer to the action. And, however inconvenient may have been the strictness with which the principle was applied, and the extent to which it

was enforced in ancient common law proceedings, the principle itself is by no means peculiar to the common law. It pervades in fact every code of law and every well regulated system for the administration of justice.

The time and the manner of the notice, whether it shall be actual or constructive, whether personal or otherwise, are subjects of legislative control, founded upon considerations of policy or expediency. There are modes prescribed by statutes arising from the necessity of the case, in which judgments may be recovered without notice to the defendant. But in the absence of statutory provisions it is an inflexible rule of law, as well as the clear dictate of justice, that no man shall be deprived of his rights, either of person or property, without an opportunity of being heard. It is not enough that the court have jurisdiction of the subject matter, they must also have jurisdiction of the person. In every proceeding of a judicial nature it is essential that the person whose rights are to be affected should be a party to the proceeding, and have an opportunity of making defence. *Matter of Flatbush avenue*, 1 *Barbour's Sup. Co. R.* 290; *Anderson* v. *Miller*, 7 *Black.* 417; *Corlies* v. *Corlies*, 8 *Verm.* 389; *Enos* v. *Smith*, 7 *S. & M.* 85; *Griffith's administrator* v. *Vertner*, 5 *Howard* 736.

In *Enos* v. *Smith*, the action was brought in covenant upon a warranty. The breach assigned was the recovery of dower in the Probate Court. Upon the record being offered in evidence, the plaintiff offered to prove that the order assigning dower was void for want of notice of the application. The court below overruled the testimony, upon the ground that no evidence could be admitted to show that the decree of the Probate Court was irregularly made. But upon error the Court of Appeals held that decision erroneous. They said truly that a judgment without notice and without the appearance of the party is a nullity, and may be shown to be so, even when it comes collaterally in question.

In *Shumway* v. *Stillman*, 6 *Wend.* 453, Chief Justice Savage, in delivering the opinion of the Supreme Court of New York, says : " An examination of the case results in the establishment of the following proposition, that a judgment of a

court of general jurisdiction in any state in the Union is equally conclusive upon the parties in all the other states as in the state in which it was rendered. This, however, is subject to two qualifications. 1. If it appear by the record that the defendant was not served with process, and did not appear in person or by attorney, such judgment is void. 2. If it appear by the record that the defendant appeared by attorney, the defendant may disprove the authority of such attorney to appear for him."

As it appears expressly by the plea that no notice was given to the plaintiff, William Hess, of the application to the Orphans' Court, as it does not appear that he became in any way a party to those proceedings, the decree of the Orphans' Court, so far at least as it operates upon his rights, is null and void. The plea consequently shows no valid defence to the action.

Let judgment be rendered for the demurrant.

Justices CARPENTER and RANDOLPH concurred.

NOTE. This case was argued at January term last. The court took time to advise until the present term, when the demurrer was sustained, and judgment ordered for the plaintiffs. In the mean time, after the argument and before the judgment was pronounced, Cole, the defendant, died.

*Browning*, for plaintiffs, asked that judgment might be entered as of the last term, when the argument was had. He cited *Den* v. *Tomlin*, 3 *Harr.* 14 ; *Spalding* v. *Congdon*, 18 *Wend.* 543 ; *Cumber* v. *Wane*, 1 *Str.* 426, &c.

He said, as the damages had not been assessed before the death of the tenant, the judgment would not bind the land, and that he hesitated as to taking judgment in this suit. *Park on Dower* 308, 309.

PER CURIAM. When the delay has occurred by the action of the court, as in the present instance, by taking time to advise, the court will in general permit judgment to be entered *nunc pro tunc*. The court will not in such case permit its action to work an injury to the party, though it is said to be otherwise when the delay has occurred by a proceeding in the

course of the common law, as by a writ of error, or the like. 1 *Archb. Pr.* 228 (*Ed.* 1838) ; 2 *Wms. Saund.* 72 *a, note to* 6*th Ed.; Lanman* v. *Audley,* 2 *M. & W.* 535.

Judgment accordingly.

CITED *in State* v. *Newark,* 1 *Dutch.* 412 ; *Hopper* v. *Chamberlain,* 5 *Vr.* 226 ; *Russel* v. *Work,* 6 *Vr.* 319 ; *State* v. *Plainfield,* 9 *Vr.* 97 ; *Jacobus* v. *Mut. Ben. Life Ins. Co.,* 12 *C. E. Green* 624.