**HONNOLD v. BOARD OF COM'RS OF CARTER COUNTY et al.**

No. 5224—Opinion Filed March 21, 1916.

On Rehearing, Oct. 1, 1918.

(177 Pac. 71.)

**1. Counties—Sale of Bonds—Contract.**

The plaintiff's proposition of July 6, 1912, and the acceptance thereof, in due form, by the board of county commissioners of Carter county, Okla., and the resolution of said board of county commissioners of September 3, 1912, under which the plaintiff and defendants acted with full knowledge on their respective parts, must be considered together, and when so considered form the contract that was entered into between the parties.

**2. Municipal Corporations — Definition — "Quasi Corporations."**

There is a well-defined and marked distinction between municipal corporations proper and- political or quasi corporations. Cities, towns, and villages are municipal corporations proper, while counties. townships, school districts, road districts, and the like are quasi corporations. The difference between these two classes of corporations is well established, and a principle applicable to the one class is not necessarily applicable to the other.

**3. Status and Power of Counties—County Commissioners—Statute.**

Each organized county within the state is a body corporate and politic, and as such is empowered by statute to sue and be sued, to make all contracts. and to do all other acts in relation to the property and concerns of the county necessary to the exercise of cor-

porate or administrative power, and to exercise such other and further powers as may be especially provided for by law. The powers of a county, as a body politic and corporate, shall be exercised by its board of county commissioners.

**4. Counties—Municipal Corporations—Municipal Funding Bonds—Statutes—Order of County Commissioner.**

Sections 362 and 366, c. 7, art. 3, entitled "Municipal Funding Bonds" (Rev. Laws Okla. 1910), are mandatory, and not merely directory. They contain the established public policy of our state touching the several matters contained therein and were enacted for the guidance of public officers in the performance by them of public duties in relation to the public concerns of the respective municipalities mentioned therein and represented by them. No authority is conferred under this law upon the board of county commissioners of a county to sell such funding bonds either at public or private sale, by contract or otherwise.

**5. Counties—Funding Bonds—Authority of County.**

The board of county commissioners of Carter county, Okla., had no legal authority to make the contract sued on in this action on behalf of Carter county, and in so doing it acted beyond its powers and ultra vires, and said contract was entered into in violation of the terms of a mandatory statute, and in the teeth of the public policy of the state in such matters, and is contrary to public policy, ultra vires, and absolutely void, and no action can be maintained thereon, either against Carter county, or the members of the board of county commissioners of said county as individuals.

**6. Counties — County Attorney — County's Contract for Professional Services—Validity.**

Our law provides an officer whose duty it is to conduct legal proceedings in behalf of a county of our state in the person of the county attorney. Hence, when a written contract between a county and an individual shows upon its face that it was made by the county for the professional services of the individual as an attorney or counselor at law to represent said county, which services are such as the law requires to be performed by the county attorney of the county, such contract is ultra vires and prima facie void.

**7. Counties — Contracts — Disposition of Funding Bonds — Time as Essence of Contract.**

Time was not intended to be of the essence of this contract.

(Syllabus by Davis, C.)

Error from District Court. Carter County; S. H. Russell, Judge.

Action by C. Edgar Honnold against Board of County Commissioners of Carter County, Okla., and Wm. Kirkpatrick and others, members of such board. Judgment for defendants, and plaintiff brings error. Affirmed.

Lawrence Mills, for plaintiff in error.

A. J. Hardy, W. F. Bowman, J. A. Bass, and Cruce & Potter, for defendants in error.

Opinion by DAVIS, C. Carter county, Okla., being legally and justly indebted upon valid and subsisting warrants and claims in the sum of $46,000, said claims and accounts were duly prosecuted to judgment on the 3d day of September, A. D. 1912, in the district court of said county, by the Ardmore National Bank, for itself and as representative of other holders of said claims. Said judgment being in the sum of $46,000, and said proceedings having been had under chapter 7, art. 3, entitled "Municipal Funding Bonds," of the Revised Laws of Oklahoma 1910. The plaintiff in error made the following proposals in writing to the county commissioners of said county looking to the purchase of said funding bonds, and the same were duly accepted by resolutions of the board of county commissioners, as follows, to wit:

"July 6, 1912.

"To the Honorable Board of County Commissioners, Carter County, Ardmore, Oklahoma:

"Gentlemen: For the outstanding indebtedness of Carter county, including claims, warrants, and judgments, I will agree to take up this indebtedness by the issuing of funding bonds to be known as Funding Bonds of Carter County, Oklahoma, to be dated as soon as legally can be dated, and maturing twenty years from date, without prior date of option, bearing interest at the rate of six per cent. per annum, payable semiannually, both principal and interest payable at the Oklahoma State Fiscal Agency in New York City, which said bonds are to be in denomination of $1,000.00 so far as possible, I will pay you on delivery of said bonds to me in Oklahoma City, or Chicago, Ill., par value for said bonds.

"I further agree to furnish lithographed blank bonds and all other papers and forms necessary to complete the issuance of said bonds, guiding and directing such proceedings. I will represent your county in having said bonds registered by the State Auditor, and presenting said bonds to the Attorney General for approval.

"I further agree as part of my proposition to reduce the claims and warrants to judgments for said county. You are to furnish me with a full certified transcript of all the proceedings leading up to, and culminating in, the issuing and delivery of said bonds. I will pay for said bonds within ten days after the approval of the Attorney General.

"This bid is made for immediate acceptance or rejection at your meeting of this date. The entire proceedings to be completed, bonds approved by Attorney General, and the money actually paid in cash to Carter county not later than October 1, 1912.

"Respectfully submitted,
                    "C. Edgar Honnold.

"The above proposition submitted by C. Edgar Honnold, of Oklahoma City, is approved and accepted by the board of commissioners of Carter county, Oklahoma, being an open session of said board on this the 6th day of July, 1912, on motion of O. K. Darden, seconded by W. M. Kirkpatrick, vote being favorable.

                    "Robert F. Scivally,
        "Chairman County Commissioners.
                    "W. M. Kirkpatrick,
                        "Commissioner.
                    "O. K. Darden,
                        "Commissioner."

"Attest:

"B. W. Duke, County Clerk."
                    "September 3, 1912.
                    "Resolution.

"Whereas, C. Edgar Honnold, of Oklahoma City, Oklahoma, has made a proposition of not less than par for the funding bonds of Carter county, amounting to $46,-000.00, known as funding bonds of 1912, issued by the board of county commissioners of Carter county, to be dated 17th day of September, 1937, bearing interest at the rate of 6 per cent. per annum, payable semiannually both principal and interest being payable at the Oklahoma State Fiscal Agency in New York City.

"Wherefore, be it resolved by the board of county commissioners of Carter county, Oklahoma, that said bid of C. Edgar Honnold be, and the same is, accepted, and the said bonds are hereby awarded to him on his said bid, and the chairman of the board of county commissioners and the clerk of said county are hereby directed to deliver said bonds, with the interest coupons attached, to C. Edgar Honnold on compliance of him with the terms of his said bid.

"On motion of W. M. Kirkpatrick, seconded by O. K. Darden, said resolution was adopted by the following vote:

"Aye, Robert F. Scivally, W. M. Kirkpatrick, O. K. Darden. Noes, none.

                    "Robert F. Scivally,

"Chairman of Board of County Commissioners.

"Attest: B. W. Duke, County Clerk."

That the plaintiff prepared, and the board of county commissioners adopted, all resolutions necessary for the legal issuance of said bonds, and on the 17th day of September, A. D. 1912, the plaintiff delivered to the chairman of the board of county commissioners, Robert F. Scivally, a duly and properly certified transcript of the proceedings of the board of county commissioners, and of the judgment of the district court and Carter county, approving said bonds, and also the said bonds, duly signed, executed, and attested by the proper officers to make the same binding obligations of said county, and on the 24th day of September, A. D. 1912, the said bonds, together with a certified transcript of the above proceedings, were duly presented to and deposited in the office of the Attorney General of the state of Oklahoma for his approval, as by law provided, by the same Robert F. Scivally; that by rule of the Attorney General's office bonds are delivered only to the treasurer of the county issuing the same, or to the person duly authorized to receive them by such treasurer in writing; that on the 25th day of September, A. D. 1912, the plaintiff directed a letter to D. B. Rumph, treasurer of Carter county, Okla., inclosing a blank sight draft, with instructions to fill out said draft with the amount due the county upon said bonds, and to sign and transfer the same to the City State Bank for collection, together with instructions to the Attorney General's office to deliver the said bonds to the City State Bank, stating that when that should have been done he would take up the bonds at once; no answer to said letter was sent by said treasurer or by any other official of said county, and the said draft was not drawn as requested in said letter; no request was made by the officials of said county to the plaintiff requiring him to take up said bonds, nor were there any communications of any kind directed to him; that the Attorney General approved said bonds on October 10, 1912, and directed a letter to the said treasurer on said date expressing said approval; that on the 10th day of October, A. D. 1912, the county clerk of said county directed letters to this plaintiff and the other bond buyers, notifying them that the said bonds would be sold at auction to the highest bidder on October 14th, A. D. 1912, at 2:30 o'clock p. m.; that the said defendants refused to deliver the said bonds to this plaintiff under their contract, although proper demand was made upon the proper officials of said county, under the approval of said bonds by said Attorney General, and on October 15, A. D. 1912, the

said bonds were sold at public auction and delivered to the purchaser, who was a person other than this plaintiff; that said bonds, at the time they should have been delivered under said contract, if said contract was a legal and binding obligation of said county, were of the value of $1.10 upon the $1.00 represented by said bonds; that the officers mentioned in plaintiff's petition occupy and hold the offices of defendant county alleged therein; that plaintiff bore the expense of lithographing said bonds and the other expense incidental to the issuance thereof; that said bonds were issued and sold to other parties, and that plaintiff demanded of defendants that they be delivered to him at par, the same being the identical bonds described in plaintiff's proposition of July 6, 1912, except that the bonds actually issued and sold and demanded by plaintiff were to mature 25 years from maturity, while the bonds described in said proposition were to mature 20 years from date thereof, and that said 25-year bonds as issued were of greater market value than said 20-year bonds. A jury was waived in the trial court, and the cause submitted to the court upon a written agreed statement of facts, the substance of which is set out hereinabove. There was judgment for the defendants and against plaintiff, and the plaintiff brings the case here for review, asking that the judgment below be set aside, and that he have judgment either against Carter county for $4,600 and costs of suit or against the county commissioners of said county, defendants in error herein, individually for said sum and costs.

With the contention of counsel for defendants in error that plaintiff's proposition of July 6, 1912, and the acceptance thereof in due form by the board of county commissioners of Carter county, and that the resolution of said board of county commissioners of September 3, 1912, under which the plaintiff and defendants acted in this matter with full knowledge on their respective parts do not constitute a contract, we are unable to agree. In our opinion the proposition of July 6 1912, and the resolution of September 3, 1912, must be considered together as forming and being the contract between these parties, plaintiff and defendants.

"Contracts of sale of merchandise frequently consist of a written order given by the buyer for the goods desired and an oral acceptance thereof by the seller." Cameron Coal & Mercantile Co. v. Universal Metal Co., 26 Okla. 615, 110 Pac. 720, 31 L. R. A. (N. S.) 618; 9 Ency. of Evidence, 487.

"An 'assent' is evidenced by a proposition emanating from one side, and an acceptance of it on the other, such proposition and acceptance together constituting what is called a 'meeting of the minds.'" Wm. J. Lemp Brewing Co. v. Secor, 21 Okla. 537, 96 Pac. 636.

"When a contract is executed which refers to and makes the conditions of another instrument a part of it, the two will be construed together as the agreement of the parties." Ætna Life Ins. Co. v. Bradford, 45 Okla. 70, 145 Pac. 316, Ann. Cas. 1918C, 373.

Counsel for plaintiff in error quotes extensively in his brief from the case of Safety Insulated Wire & Cable Co. v. Mayor & City Council of Baltimore. 66 Fed. 140, 13 C. C. A. 375, and from the case of Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 278, 22 C. C. A. 171, 34 L. R. A. 518, and cites Dill. Mun. Corp. (3d Ed.) 66 and cases cited in the note, setting forth eight additional cases, for the purpose of supporting this proposition of law deduced by him therefrom:

"We take it from these decisions that a county, when merely exercising its powers for its private benefit and advantage, is upon an equal footing with a private corporation or individual, and is liable in damages for its failure or refusal to comply with its contract."

We find no fault with the doctrine announced in these cases, and understand them to be sound law, as applicable to the facts of each; but it must be remembered that Dillon on Municipal Corporations is a treatise upon the law relating to cities and towns as contradistinguished from other municipal corporations of a state, and that a city of the first class is a party in each of the ten cases cited, except the case of Tacoma Hotel Co. v. Tacoma Light & Water Co., 3 Wash. 316, 325, 28 Pac. 516, 519, 14 L. R. A. 669, 28 Am. St. Rep. 35, wherein both parties were private corporations, while in the instant case the defendant is a political subdivision or quasi corporation of our state.

Mr. Dillon in volume 1 of his work on Municipal Corporations (3d Ed.) §§ 22, 23, touching the distinction between incorporated villages, towns, and cities and private corporations and public or civil or political or quasi corporations. has this to say:

"22.  Corporations intended to assist in the conduct of local civil government are sometimes styled political. sometimes public, sometimes civil, and sometimes municipal, and certain kinds of them with very restricted powers—quasi corporations— all these by way of distinction from private corporations. All corporations intended as agencies in the administration of civil government are public, as distinguished from private corporations. Thus an incorporated school district or county, as well as city, is a public corporation; but the school district or county, properly speaking, is not, while the city is a municipal corporation. All municipal corporations are public bodies, created for civil or political purposes; but all civil, political, or public corporations are not, in the proper use of language, municipal corporations. The phrase 'municipal corporations,' in the contemplation of this treatise, has reference to incorporated villages, towns, and cities, with power of local administration, as distinguished from other public corporations, such as counties and quasi corporations.

"23.  The distinction, as it is usually drawn between municipal corporations proper, such as chartered towns and cities, or towns and cities voluntarily organized under general incorporating acts, such as exist in a number of the states, and involuntary quasi corporations, such as counties, is this: Municipal corporations proper are called into existence either at the direct solicitation or by the free consent of the persons composing them, for the promotion of their own local and private advantage and convenience. On the other hand, 'counties are at most but local organizations, which, for the purpose of civil administration, are invested with a few functions characteristic of a corporate existence. They are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. The former (municipal) organization is asked for, or at least assented to, by the people it embraces; the latter organization (counties) is superimposed by a sovereign and paramount authority. A county is one of the public territorial divisions of a state. created and organized for public political purposes connected with the administration of the state government, and especially charged with the superintendence and administration of the local affairs of the community; and, being in its nature and objects a municipal organization, the Legislature may. unless restrained by the Constitution, or some one of those fundamental maxims of right and justice with respect to which all governments and society are supposed to be organized, exercise control over the county agencies, and require such public duties and functions to be performed by them as fall within the general scope and objects of the municipal organization.

"'A municipal corporation proper is created mainly for the interest, advantage, and convenience of the locality and its people; a county organization is created almost exclusively with a view to the policy of the

state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provisions for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the state, and are, in fact, but a branch of the general administration of that policy.'"

As we understand the law, quasi corporations of our state, such as counties, townships, school districts, road districts, and the like, are organizations, though corporations, existing as such for the general political government of the state only, possessing only powers of the state, and charged with performance of state duties only. And to such an extent is this true that they cannot be held liable for neglect of public duty on the part of their public officers except by statute.

Chief Justice Horton, speaking for the Supreme Court of Kansas, in the case of Eikenberry v. Township of Bazaar, Chase Township, 22 Kan. star page 557, page 389, 31 Am. Rep. 198, makes use of the following language:

"The principal question presented is whether a township in this state is liable for injuries caused by unsafe or defective highways. In the absence of an express statute imposing the liability, the authorities uniformly hold that organizations, such as counties, townships, school districts, road districts, and the like, though possessing corporate capacity and power to levy taxes and raise money, have been considered not to be liable for neglect of public duty. The theory of these various decisions is, in effect, that such organizations, though corporations, exist as such only for the purposes of the general political government of the state; that all the powers with which they are intrusted are the powers of the state, and all the duties with which they are charged are the duties of the state; that in the performance of governmental duties the sovereign power is not amenable to individuals, and therefore these organizations are not liable at the common law for such neglect, and can only be made liable by statute. Cooley. Torts, 622; 2 Dill. Mun. Corp. 761, 763; Town of Waltham v. Kemper, 55 Ill. 346 [8 Am. Rep. 652]; Commissioners of Hamilton Co. v. Mighels, 7 Ohio St. 109. As our state has not adopted any statute expressly making townships liable for injuries on highways, resulting from neglect of public duty, these organizations are not, under the authorities, liable in civil actions for neglect in that regard. Counsel for plaintiff in error cite the decisions of this court that cities,

having power conferred upon them in reference to streets and sidewalks, which in some respects are similar to the powers granted townships, are liable for injuries resulting from failure to keep their streets and sidewalks in safe condition, and assert that, logically, the same doctrine should be applied to townships. Counsel fail to note the distinction between municipal corporations proper and quasi corporations. This distinction is pointed out and commented on in Beach v. Leahy, 11 Kan. 23. Cities, towns, and villages are municipal corporations proper, while counties, townships, school districts, and road districts are quasi corporations. The difference between these two classes of corporations is well established, and a principle applicable to the one class is not necessarily applicable to the other."

See, also, in this connection, Dillon on Municipal Corporations (3d Ed.) vol. 2, § 963, and cases cited in notes; Comm'rs of Marion County v. Riggs, 24 Kan. 255; Township of Quincy, in Greenwood County, v. James Sheehan, 48 Kan. 620, 29 Pac. 1084; Cornelius, J., Freel v. School City of Crawfordsville, 142 Ind. 27 41 N. E. 312, 37 L. R. A. 301; Kincaid v. Hardin County, 53 Iowa, 430, 5 N. W. 589, 36 Am. Rep. 236; City of Galveston v. Posnainsky, 62 Tex. 118, 50 Am. Rep. 517; Board of County Comm'rs of Greer County v. Jesse A. Watson, 7 Okla. 174, 54 Pac. 441.

Justice Myers, speaking for the Supreme Court of Indiana in the case of State v. Goldthait, 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. p. 737, among other things touching this question, said:

"Counties are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, for governmental purposes, without the particular solicitation, consent, or concurrence of the inhabitants of the county, and their powers are limited, and must be exercised in the manner provided by statute. Myers v. Gibson (1897) 147 Ind. 452, 46 N. E. 914; State v. Hart (1896) 144 Ind. 107, 43 N. E. 7, 33 L. R. A. 118; Gavin v. Wells County (1885) 104 Ind. 201, 3 N. E. 846; Jasper County v. Allman (1895) 142 Ind. 573, 42 N. E. 206, 39 L. R. A. 58. That such boards of commissioners are by statute made corporations does not change the conditions or the results or enlarge their powers. The purpose of investing them with corporate powers was evidently not thereby to extend their powers, but to create a legal entity, the better to further the purpose of their creation. * * * Considered with respect to their corporate powers, counties rank low down in the scale of corporate existence, and are frequently termed quasi corporations.' State v. Hart, supra."

It is true that under section 1497, Re-

vised Laws 1910, each organized county within the state shall be a body corporate and politic, and as such shall be empowered. among other things, to sue and be sued, to make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of corporate or administrative power, and the exercise of such other and further powers as may be especially provided for by law. And under section 1499 of the same laws, supra, the powers of a county as a body politic and corporate shall be exercised by its board of county commissioners.

This brings us down to the consideration and determination of the most vital question raised by the issues in this case, namely, was the contract in question one that the county commissioners of Carter county could lawfully make and enter into so as to bind said county, or so as to bind themselves as individuals? Let us see.

These proceedings were had under chapter 7, art. 3, "Municipal Funding Bonds," Revised Laws of Oklahoma, 1910, section 362 thereof reading as follows:

"Funding Bonds.—Every county, every city or town, the board of education of every city, every township, and every school disrict, is hereby authorized and empowered to refund its indebtedness, including bonds, judgments, and warrants, as hereinafter provided, upon such terms as can be agreed upon, and to issue new bonds with annual or semiannual interest coupons attached in payment for any sum so refunded; which bonds shall be sold at no less than par, and shall not be for a longer period than twenty-five years, shall not exceed in amount the actual amount of outstanding indebtedness, inclusive of attached coupons, and shall not draw a greater interest than six per cent. per annum." (Emphasis ours.)

Section 363 following treats of the notice, and section 364 of the procedure, and section 365 of attestation and terms of bonds, and section 366 reads as follows, so far as applicable to this case:

"Limitation of Issues.—When a refunding has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon, to the holder of such indebtedness, in the manner prescribed in this article; but no bonds shall be issued under this article until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation." (Emphasis ours.)

"Upon such terms as can be agreed upon" —agreed upon by and between whom? Clearly by and between the board of county com-

missioners duly acting for the county in any case and the legal owners or holders of the indebtedness, bonds, judgments, and warrants, as the case may be, sought to be refunded. "When a refunding has been agreed upon" clearly between the same parties as supra, "It shall be the duty of the proper officers to issue such bonds at the rate agreed upon, to the holder of such indebtedness, in the manner prescribed in this article; but no bonds shall be issued under this article until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation." "Delivered up" to whom for "cancellation"? Clearly to the proper municipality refunding its indebtedness, in this case Carter county, Okla.

Are sections 362 and 366, supra, mandatory or directory merely? Section 362 has already been declared mandatory by our Supreme Court in the case of Honnold v. Saunders et al., 43 Okla. 714, at page 717. 143 Pac. 44, at page 45 when, after quoting said section in full, Mr. Justice Bleakmore, speaking for the court, says:

"Under the provisions of said section the bonds so issued could not lawfully exceed the actual amount of the outstanding indebtedness of the township, and if, by reason of any understanding or agreement between the plaintiff in error and the township officers, ten per cent., the amount of the fee and expenses claimed by the plaintiff in error, was added to the amount thereof, the same was done in violation of the statute, and constituted a fraud upon the township, and plaintiff cannot profit thereby."

Under these sections, supra, a power has been expressly delegated by the Legislature of our state to public officers, and the public interests and individual rights demand its exercise. And said officers must, as we understand the law, exercise their powers so delegated in strict conformity with the terms and provisions of said grant, and not otherwise, and this is true although the language of such statutes may be permissive in form.

Mr. Chief Justice Burford, speaking for the Supreme Court of Oklahoma territory, in the case of S. J. Jordan, County Superintendent of Schools, Washita County v. Lelah Davis, 10 Okla. 329, at page 332, 61 Pac. 1063, quotes with approval from the case of Rock Island County v. United States ex rel. State Bank 4 Wall. 435, 18 L. Ed. 419, in the following language:

"The Supreme Court of the United States

In the case of Supervisors v. United States, 4 Wall. 435 (18 L. Ed 419), had under consideration the question as to when the word 'may' in a statute imposes an imperative duty. Mr. Justice Swayne, speaking for the court, said:

" 'The conclusion to be deduced from the authorities is that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depository to meet the demands of right. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the Legislature, which is the test, was not to devolve a mere discretion, but to impose a positive and absolute duty.'

"This rule has been repeatedly approved by the same court, and also by the courts of highest resort in a large number of the states. See authorities cited in volume 6, notes U. S. Reports, 616."

In the case of Board of County Commissioners of Shawnee County v. Luther M. Carter, 2 Kan. 115, a bond case, Kingman, J., speaking for the Supreme Court of that state, says:

"The county is a political subdivision of the state, acting as a corporation, with certain specified powers, and acting through its officers in a certain prescribed way pointed out by law. These officers are the agents of the county, acting for it in all those matters confided to them by law, each in his appropriate and prescribed line of duties, and many, if not most, of the duties intrusted to them are not only pointed out by the law, but the very mode of performing them is aid down with accuracy and precision. When so laid down, there is no discretion in the officers as to the manner in which they are to act. In that respect they are ministerial officers, and bound to observe the limitations imposed upon them by the law, agents who cannot act in any but the prescribed way, and this rule loses nothing of its force when we remember that these agents were, at the time these bonds were executed, not agents created by the principal that was to be bound, but by the territory, through its Legislature.

" 'It is a general rule,' says the Supreme Court of Iowa, 'that when the statutes confer the special ministerial authority, the exercise of which may affect the rights of property, or incur a municipal liability, it shall be strictly observed, and that any material departure will vitiate the proceedings.'

[Hull v. Marshall County] 12 Iowa, 154. * * * Dwarris, in his treatise [on Statutes], lays down this rule: 'As a maxim it is generally true that if an affirmative statute direct a thing to be done in a certain manner, that thing shall not, even though there are no negative words, be done in any other manner,' and this rule appears to be established on well-considered principles, supported by a long train of authorities." Wykoff et al, State Board of Education, v. W. H. Wheeler & Co., 38 Okla. 771, 135 Pac. 399, and cases cited.

"Even if the terms of the statute were permissive only, and meant no more than the words generally employed in statutes importing a grant of authority or power to a public officer to do a certain act, still it is well settled that all such acts are to be construed as mandatory, whenever the public interests or individual rights call for the exercise of the power conferred." Ralston v. Crittenden (C. C.) 13 Fed. 508, 3 McCrary, 344.

"Where in a statute the performance of an act is limited to a particular form or manner, it excludes every other form or manner." District Tp. of City of Dubuque v. City of Dubuque, 7 Iowa, (7 Clarke) 262.

"Where statutes confer special ministerial authority, the exercise of which may affect the rights of property, or incur a municipal liability, it shall be strictly observed, and a material departure will vitiate the proceedings." Shawnee County Com'rs v. Carter, 2 Kan. 115, supra.

"Whatever is done in contravention of a prohibitory law is null and void, though no penalty be announced * * * for its violation. So of every act contrary to public policy. Their nullity is pronounced by the general principle of the law, and is applied by the courts as cases may arise." Pacta privata juri publico derogare non possunt. Cotton v. Brien, 6 Rob. (La.) 115.

"Statutes imposing a duty, and giving the means of performing such duty, are to be regarded as mandatory." Inhabitants of Veazie v. Inhabitants of China, 50 Me. 518; Inhabitants of Milford v. Inhabitants of Orono, 50 Me. 529.

"Where a statute, to attain a particular object, prescribes the mode of proceeding to enforce it, such mode must be pursued." In re Hughes, 1 Bland (Md.) 46.

"When a fair interpretation of a statute, which directs acts or proceedings to be done in a certain way, shows that the Legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as

mandatory." Hurford v. City of Omaha, 4 Neb. 336.

"Although the language of the act is simply enabling, yet, as it confers a power which concerns the public as well as individuals, it is not merely permissive, but is mandatory." People v. Supervisors of City of New York, 11 Abb. Prac. (N. Y.) 114.

"If an affirmative statute, introductive of a new law, directs a thing to be done in a certain manner, that thing cannot, even although there are no negative words, be done in any other manner." Cook v. Kelley, 12 Abb. Prac. (N. Y.) 35.

"Where a statute provides for the doing of an act for the sake of justice, or where it clothes a public body or officer with power to do an act which concerns the public interests or the rights of individuals, though the language of the statute be permissive merely, it will be construed as imperative, and the execution of the power may be insisted upon as a duty." People v. Otsego County Sup'rs, 51 N. Y. 401; Phelps v. Hawley, 52 N. Y. 23.

"When a public body or officer has been clothed by statute with power to do an act which concerns the public interest, the execution of the power is a duty, and, though the phraseology of the statute be permissive, it is nevertheless to be held peremptory." Springfield Milling Co. v. Lane County, 5 Or. 265.

"Where a statute authorizing a division of real estate requires notice to be given, the requirement of such preliminary notice is intended to secure to those affected an opportunity to be heard, and cannot be treated as merely directory." Corliss v. Corliss, 8 Vt. 373.

These sections, then, are mandatory, and not merely directory. They contain the established public policy of our state touching the matters contained therein, and were enacted for the guidance of public officers in the performance by them of public duties in relation to the public concerns of the respective municipalities mentioned therein. No authority is conferred under this law to the board of county commissioners of a county to sell such funding bonds either at public or private sale by contract or otherwise. The language is simple, plain, and unambiguous, and was worded so that both public and private persons might be equally and justly protected. The bonds shall be issued at the rate agreed upon, and to the holder of the indebtedness against the municipality to be funded and in the manner provided in the article, and no such bonds shall be issued under this article until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation. In the instant case, suppose the judgment creditor, the Ardmore National Bank, should demand the delivery to it of said funding bonds as agreed upon between it and the county, and should refuse to enter proper and legal satisfaction if its judgment against Carter county until this be done. No funding bonds delivered as per agreement, no satisfaction of judgment. Certainly this could occur, and certainly with the bonds previously sold and delivered, either at public sale or by private sale on contract and paid for, would leave matters in a rather awkward and anomalous condition. Just such situations as these, in our opinion, these sections and the law on this subject were meant to preclude and forestall.

"Funding bonds are issued concurrently with the cancellation of warrants of the municipality." State ex rel. Board of Education of Oklahoma City v. West, Atty. Gen., 29 Okla. 503, 509, 118 Pac. 146, 149.

"The state has the power to prescribe the terms and conditions upon which negotiable bonds of its various municipalities may be issued. * * * Those dealing with a municipality do so with notice of its powers and the authority of its officers. O'Neil Engineering Co. v. Incorporated Town of Ryan, 32 Okla. 738, 124 Pac. 19. And this is likewise true of dealers in municipal bonds, who are charged with notice of the laws of the state granting power to make the bonds they find on the market. Anthony v. County of Jasper, supra [101 U. S. 693, 25 L. Ed. 1005]." Gardner v. School Dist. No. 87, Kay County, 34 Okla. 716, 126 Pac. 1018.

We are not unmindful of the fact that many things can be and are done by common consent and agreement of persons and corporations, quasi and otherwise, outside of court, and not in strict conformity to law, where no question is ever raised concerning the same; but, when such matters are properly drawn in question before the proper tribunals of the land, it becomes the duty of such tribunal to interpret, uphold, and follow the plain mandates of the state's sovereign statutes.

Hence it follows from the above and foregoing that the question asked must, in its entirety, be answered in the negative, and we are forced to the conclusion that the board of county commissioners had no legal authority to make the contract sued on in this action on behalf of Carter county, and in doing so it acted ultra vires, and said contract was entered into in violation of the terms of a mandatory statute, and in the teeth of the public policy of the state in such

matters, and that for these reasons the same is contrary to public policy and absolutely void, and no action thereon can be maintained either against Carter county or the members of the board of county commissioners of said county as individuals. 9 Cyc. 481; 2 Corpus Juris, 806; Albert Ruemmeli v. Wm. Cravens, 13 Okla. 342, 74 Pac. 908; Light v. Conover, 10 Okla. 732 63 Pac. 966; Citizens' Nat. Bank of Chickasha v. Mitchell et al., 24 Okla. 488, 103 Pac. 720, 20 Ann. Cas. 371; American Surety Co. v. Morton, 32 Okla. 687, 122 Pac. 1103, 39 L. R. A. (N. S.) 702.

. It might not be amiss to observe that the provisions of the plaintiff's contract sued upon herein, wherein he expressly agrees with Carter county to guide and direct the funding proceedings, to represent Carter county in having said bonds registered by the State Auditor, and presenting said bonds to the Attorney General for approval, and to represent Carter county in reducing the outstanding claims and warrants to judgment, are all duties incumbent upon the county attorney of Carter county, under our laws, by virtue of his office. Section 1554, Revised Laws of Okla. 1910; Mahaffey v. Territory of Oklahoma, 11 Okla. 213, 220, 66 Pac. 342; Board of County Com'rs of Logan County v. Thomas S. Jones, 4 Okla. 341, 51 Pac. 565; Board of County Commissioners of Logan County, O. T., v. State Capital Co., 16 Okla. 625, 86 Pac. 518.

"The law provides an officer whose duty it is to conduct legal proceedings in behalf of the several counties of Kansas in the persons of the county attorneys of said counties. This court, in the case of Clough v. Hart [8 Kan. 487], supra, used the following language:

" 'Where a written contract between a county and an individual shows upon its face that it was made by the county for the professional services of the individual as an attorney or counselor at law, which services are such as the law requires to be performed by the county attorney, such contract is prima facie void.' " Waters v. Trovillo, 47 Kan. 197, 200, 27 Pac. 822, 823.

By contracting to perform such duties as these the plaintiff doubtless was greatly assisted in purchasing said bonds at par when they were actually worth $1.10 on the $1.00 at the time, and thus by indirection securing pay as a fee for his services, which he was expressly told in plain language that he could not do directly in Honnold v. Saunders et al., 43 Okla. 714, 143 Pac. 44, supra. Public officers, acting for the public interests of their several public municipalities under the law, should, in all such matters as these, make such bonds bring the high dollar to such municipality. This is their bounden duty.

We cannot hold that time was intended to be of the essence of this contract. Strunk v. Smith et al., 8 S. D. 407, 66 N. W. 926.

For the reasons stated herein, and finding no substantial error in the proceedings of the court below, it follows, therefore, that the action and judgment of the district court of Carter county should be affirmed.

By the Court: It is so ordered.

### On Rehearing.

RAINEY, J. Since the rehearing was granted in this cause we have again thoroughly and carefully re-examined the opinion and the positions of law advanced in the briefs, and have concluded that Commissioner Davis, who prepared the opinion for the court, has correctly construed the statute under consideration and that the contract discussed in the opinion is invalid for the reasons stated therein.

All the Justices concur, except SHARP, C. J., who concurs only in the conclusion.