Note.—See under (1) 2 C. J. p. 944, §708; pp. 960, 961, §731; 21 R. C. L. 822; 4 R. C. L. Supp. p. 1432; 6 R. C. L. Supp. p. 1285. (2) 4 C. J. p. 969, §2952; 2 R. C. L. p. 247; 1 R. C. L. p. 473; 4 R. C. L. Supp. p. 97; 5 R. C. L. Supp. p. 87; 6 R. C. L. Supp. p. 81. (3) 7 C. J. p. 539, §142; anno. 1917A, pp. 885-889; 3 R. C. L. 420; 1 R. C. L. Supp. p. 822.

---

### NEWS-DISPATCH PRINTING & AUDIT CO. v. BOARD OF COM'RS OF ROGERS COUNTY.

No. 17135. Opinion Filed Nov. 22, 1927.

Rehearing Denied April 3, 1928.

(Syllabus.)

1. **Judgment—Merger in Funding Bonds Issued by County.**

When funding bonds are issued by a county to pay an outstanding judgment indebtedness, the judgment becomes merged into the bonds, and cannot thereafter exist as a separate entity aside from the bonds.

2. **Counties—County Officers Without Authority to Sell Funding Bonds or Handle Proceeds.**

No authority is conferred by the law of this state upon the board of county commissioners of a county to sell funding bonds. And no officer of a county, as such, has authority to handle the proceeds of such bonds

after they are sold. Following Honnold v. Board of County Commissioners, 71 Okla. 71, 177 Pac. 71, and overruling Maryland Casualty Company v. Board of County Commissioners, 128 Okla. 58, 260 Pac. 1112, in so far as that decision conflicts with the law as herein held.

3. **Same—Judgment Creditor Failing to Receive Proceeds from Sale of Funding Bonds not Entitled to Tax Levy by County to Pay Judgment.**

The failure of a judgment creditor of a county to receive the amount of his judgment out of proceeds from the sale of funding bonds issued by the county to liquidate such judgment, though such sale was made by members of the board of county commissioners and the proceeds received by the county treasurer and disbursed by said officers, does not give the creditor the right to thereafter have a tax levied and collected by the county to pay the judgment.

Commissioners' Opinion, Division No. 1.

Error from District Court, Rogers County; C. H. Baskin, Judge.

Action by the News-Dispatch Printing & Audit Company against the Board of Commissioners of Rogers County, for writ of mandamus. Writ refused, and plaintiff appeals. Affirmed.

Edgar Anderson, for plaintiff in error.

N. B. Johnson, Co. Atty., for defendant in error.

REID, C. It is shown by evidence and by stipulation filed in this case, that Rogers county was indebted to sundry parties, and that the plaintiff was one of the claimants with an indebtedness of $1,085.35. These creditors assigned their claims to T. B. Carden, B. H. Bayless, and Albert Carlson, who, as trustees for the claimants, recovered a judgment against the county for the sum of $31,400.84, on April 18, 1922. After the rendition of this judgment, the board of county commissioners of the county resolved upon a bond issue to fund the judgment. The funding bonds were duly issued and approved. They were thereafter sold and proceeds placed in the hands of the county treasurer of the county, and thereupon the board issued its special warrants to the various claimants, including one to plaintiff. Plaintiff's warrant was not received by it, and though the evidence is not clear, it seems that the indorsement was forged and the proceeds appropriated; at least, the funds never came to the plaintiff. Thereafter plaintiff requested the board to pay its judgment, or make an estimate for

judgment levy and certify the same to the excise board for the fiscal year of 1925-26.

The board of commissioners refused to comply with the request, whereupon this action was begun in the district court, asking that mandamus issue requiring the board to make the estimate for payment of the judgment, certify the same to the excise board, and to require the excise board to approve and certify the levy to the county assessor.

Upon final hearing the mandamus was refused, from which judgment denying the writ, the plaintiff appealed.

When the funding bonds were issued, plaintiff's judgment thereby became merged into the bonds. In re Menefee, State Treasurer, 22 Okla. 365, 97 Pac. 1014; State ex rel. Board of Education of Oklahoma City v. West, Atty. Gen., 29 Okla. 503, 118 Pac. 146.

The doctrine announced in these cases is sustained by abundant authority: Cass County v. Wilbarger County (Tex.) 60 S. W. 988; Nat. Life Ins. Co. v. Mead, Co. Treas. (S. D.) 82 N. W. 78, 48 L. R. A. 785; City of Huron v. Second Ward Savings Bank, 86 Fed. 272, 30 C. C. A. 38, 49 L. R. A. 534; City of Pierre v. Dunscomb, 106 Fed. 611, 45 C. C. A. 499; Board of County Commissioners v. Travelers Ins. Co., 128 Fed. 817, 63 C. C. A. 467; Hirt v. City of Erie (Pa.) 49 Atl. 467; City of Mitchell v. Smith, City Auditor (S. D.) 80 N. W. 1077; Opinion of the Justices (Me.) 18 Atl. 291; Board of Com'rs Lake Co. v. Platt, 79 Fed. 567, 25 C. C. A. 87; McQuillin, Municipal Corp. (1913 Ed.) sec. 2226, citing State ex rel. v. West, 29 Okla. 503, 118 Pac. 146.

When the funding bonds were issued and sold, and thereby became an outstanding obligation against the county, the judgment no longer existed as an entity aside from the bonds. The fact that plaintiff's judgment was not paid out of the proceeds did not have the effect to revive the judgment which passed out of existence, as such, upon the issuance of the bonds.

It is no answer to the foregoing proposition to say that the stipulation in this case shows that the board of county commissioners sold these bonds, placed the money with the county treasurer, and proceeded to distribute to the claimants by special warrants drawn on the fund, the amounts of their claims as included in the original judgment. The duties of a board of county commissioners, in such cases as this, is exhaustively discussed in the case of Honnold v. Board of County Commissioners of Carter County, 71 Okla. 71, 177 Pac. 71, and the substance of the conclusion of the court is there stated as follows:

"No authority is conferred under this law to the board of county commissioners of a county to sell such funding bonds either at public or private sale by contract or otherwise. The language is simple, plain and unambiguous, and was worded so that both public and private persons might be equally and justly protected. The bonds shall be issued at the rate agreed upon, and to the holder of the indebtedness against the municipality to be funded and in the manner provided in the article, and no such bonds shall be issued under this article until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation."

Upon the issuance of the funding bonds in this case, it was the duty of the proper officers of Rogers county to deliver the bonds to the judgment creditor. The board of county commissioners, as officers of that county, had no authority to sell these bonds, and no officer of that county, as such, had authority to handle the proceeds of the bonds after they were sold. The law fully protects the judgment creditor upon the issuance of the bonds. It is to the protection of the creditor that the law provides that the bonds shall be delivered to him. If delivery is refused the creditor, he can compel it by proper proceeding. Before the board of county commissioners could pass title to these bonds, it was necessary to have the consent of the judgment creditor to make the sale and if the creditor consented that the parties composing this board of commissioners sell the bonds, it consented that they do this as individuals, and not as a board of county commissioners, because the law directs the officers to deliver the bonds to the creditor, and the authority of the officer is limited to the execution of that command. If the proceeds of this bond issue came into the hands of any person holding an office in Rogers county, such person received this as an individual and not as an officer of the county, and if the proceeds were dissipated or diverted from the purpose intended, the person or persons in doing this were acting without the scope of their authority as officers of that county, and the county is not liable for their acts.

The foregoing conclusion is based upon the rule announced in the Honnold Case. However, we find that the later case of Maryland Casualty Co. v. Board of County Commissioners of Okmulgee County, 128

Okla. 58, 260 Pac. 1112, prescribes a different procedure to be followed by officers of municipalities in regard to funding bonds, in the sixth paragraph of the syllabus, wherein it is said:

"The requirement of the statute that the municipality sell the bonds for not less than par and pay the creditors from the proceeds imposes the status of a trustee on the officer who receives the purchase price for the bonds for the benefit of the creditors whose old indebtedness was merged into the funding bonds."

That case in that particular is in conflict with Honnold v. Board of County Commissioners of Carter County, supra, which we think states the correct doctrine, and therefore, in so far as the case of Maryland Casualty Co. v. Board of County Commissioners, supra, is in conflict herewith, as well as with the Honnold Case, the same is hereby expressly overruled.

The trial court did not err in refusing the mandamus, and the judgment in so doing should be affirmed.

BENNETT, TEEHEE, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See 15 C. J. p. 628, §338 (Anno).