## APPLICATION OF BOARD OF EDUCATION OF CITY OF ARDMORE.

No. 26129. July 16, 1935.

Rehearing Denied Sept. 10, 1935.

Application for Leave to File Second Petition for Rehearing Denied Sept. 25, 1935.

Stephen A. George and Earl Appleton Brown, for plaintiff in error.

Dolman, Dyer & Dolman and Potterf, Gray & Poindexter, for defendant in error.

RILEY, J. This appeal involves the question of the authority or power of the district court to control the rate of interest of bonds about to be issued to refund judgment indebtedness of a municipality, and the effect of the contract or agreement to fund.

The board of education of the city of Ardmore entered into an agreement with R. J. Edwards, Inc., and W. J. Barnett, Bank Commissioner, to fund certain judgment indebtedness of the school board. The agreement provided that the funding bonds when issued should bear 6 per cent. interest, and should run from 4 to 17 years, payable in annual installments of about $4,000 each, the first installment to be due in four years, and that the agreement itself was subject to the approval of the district court.

Thereafter the board of education gave notice as required by law that it would, on October 18, 1934, proceed before the district court of Carter county to make a showing and offer proof and ask the court to determine the existence, character, and amount of its outstanding judgment indebtedness, and to sign bonds to be issued in payment thereof.

The Carter County Taxpayers Association, a corporation, and Kenneth Hudson, and other individual taxpayers of said school district filed a remonstrance, or protest, against the issuance of such bonds. Among other things they alleged that the rate of interest proposed. viz., 6 per cent., was excessive; that such bonds were then being sold on the market at or about a 5 per cent. basis; that it was wholly unnecessary to issue bonds bearing 6 per cent. interest; that such proposed bond issue would result in a great and excessive burden upon the taxpayers, compelling them to pay interest on said indebtedness over the term of the proposed bond issue in the sum of $37,000, and that it would be to the better interest of the taxpayers to pay said indebtedness in three annual installments of one-third the amount of such indebtedness, whereby the total amount of interest required would be approximately $6,720.

Hearing was had in which it was shown that the school district had an outstanding bond issue in the sum of $99,000, which would mature June 1, 1934; that a sufficient amount of money had been collected and placed in the sinking fund to pay said bonds when they fell due. But the board of education, or its treasurer, had invested some $9,000 or $10,000 of its sinking fund in its own nonpayable warrants.

The school board, or its treasurer, had deposited several thousand dollars of its

sinking fund in the American Bank & Trust Company, which had become insolvent, and had been placed in the hands of the State Bank Commissioner for liquidation. This deposit was secured by other nonpayable warrants of the school district, which, including accrued interest, amounted to about $43,000.

The school board undertook to sell the warrants in which it had invested its sinking fund, which, including accrued interest, amounted to some $12,000. It was unable to do so. The Bank Commissioner did not have sufficient money with which to pay the money deposit due the sinking fund. As a result the school board found itself without sufficient money to take up or pay off the $99,000 bonds that were about to fall due. The board of education took the matter up with local banks, financial institutions, and local financiers, and was unable to sell its warrants it held in its sinking fund. Unless the board of education could convert the warrants it held in its sinking fund into cash, or collect the deposit from the insolvent bank, it must default in payment on its bonds when they fell due June 1, 1934. Thereupon, the board opened negotiations with R. J. Edwards, Inc., resulting in an agreement whereby Edwards, Inc., agreed to buy the warrants which the board held in its sinking fund, and the board, in turn, agreed to fund its indebtedness and take up its warrants. It seems that the agreement included the warrants owned by the insolvent bank, but which had been pledged by it to secure the deposit made by the school board in said bank.

R. J. Edwards, Inc., bought the warrants in which the board had invested its sinking fund. This, with other available cash, enabled the board of education to pay off its bonds maturing June 1.

Before these proceedings were commenced, R. J. Edwards, Inc., went into the district court and obtained judgment against the board, on the warrants it had bought.

The Bank Commissioner also commenced an action to obtain judgment on the $43,000 in warrants which the Bank & Trust Company had bought. The court declined to render judgment thereon in favor of the Bank Commissioner for the reason that the warrants had been pledged to the treasurer of the school board to secure his deposit in said bank.

Thereupon the Bank Commissioner sold certain other bonds and securities held by him which were owned by the bank at the time it became insolvent, and paid the school board its deposit, and secured the release of the warrants, whereupon judgment was entered in favor of the Bank Commissioner in the sum of $43,546.86.

The amount of the judgment in favor of R. J. Edwards, Inc., was $12,074.16.

It appears that the Bank Commissioner had agreed with R. J. Edwards, Inc., to sell it the funding bonds when issued to pay off the judgment held by the Bank Commissioner, at par. There was some evidence that the agreement to fund was a tri-partite agreement between the board of education, R. J. Edwards, Inc., and the Bank Commissioner. This is referred to by some of the parties as a "gentlemen's agreement."

There was some evidence to the effect that funding bonds of the kind sought to be issued, bearing 5 per cent. interest, would readily sell on the market at par, and that the bonds, if issued, bearing 6 per cent. interest, would sell on the market at a premium of from $6,000 to $7,500 on an issue of $55,000.

After the hearing the court made certain findings, and concluded that the rate of interest proposed was excessive, and refused to approve and sign the bonds.

The journal entry of judgment goes somewhat at length in giving the court's reasons for his findings and conclusions. Among other things, the court found:

"I find in this case that the school board is acting and has acted at all times in this case and with this matter honestly and in good faith. I find that the two judgments sought to be funded herein are legal and valid judgments. Now we have those matters out of the way. I find that the rate of interest proposed in the refunding bonds is excessive and an abuse of discretion."

And:

"I find the rate of 6 per cent. proposed in these refunding bonds to be excessive and that it would be an abuse of discretion to fund the bonds at that rate. It would be penalizing the taxpayers of this county under the testimony here. At that rate it shows that a great profit would be made off the taxpayers and I feel that it is the duty of the court in this matter to protect the taxpayers. I do not mean any offense to the board members. I have found that they have acted in good faith. As stated during the argument, it is apparent that the reason they agreed on 6 per cent. and the reason they wanted the bonds' refunded now on that basis is that they feel

a moral obligation to do so because of their trade with this bond dealer, and since said bond dealer had advanced or invested certain monies which was of some assistance to the school district as shown by the evidence."

And:

"I find, however, that it is an abuse of discretion to permit this excessive rate of interest, and for that reason that I refuse to grant the application and therefore deny the application."

It clearly appears that the court based its order denying the application wholly upon its findings that the rate of interest proposed was excessive, and that because the rate of interest was found to be excessive the court concluded that the board of education had abused its discretion in agreeing to such rate of interest.

The question involved is whether the court has power to control the discretion of the board in the matter, and, if so, whether there was as a matter of law an abuse of discretion.

When the question of funding judgment indebtedness arises it is wholly within the discretion of the officers having charge of the fiscal affairs of the municipality whether such indebtedness should be funded or paid by tax levy as provided by law.

It might be to the interest of some taxpayers to have the judgment indebtedness funded, and to the interest of other taxpayers to have the judgment indebtedness paid by tax levy as quickly as possible. The proper officers must decide the matter, and their discretion may not be controlled, either by taxpayers or by the court.

The terms of such refunding issue, however, must come within the provisions of section 4268, C. O. S. 1921 (sec. 5932, O. S. 1931). The agreement may provide for the issuance of bonds bearing interest payable annually or semi-annually. And this is also within the discretion of the officers of the municipality. The agreement must not provide that the bonds be sold for less than par, and the agreement must not provide for bonds to run for a period longer than 25 years, and shall not provide for a bond issue in excess of the amount of the outstanding indebtedness, and must not provide for bonds bearing a greater rate of interest than 6 per cent. per annum.

These are all preliminary matters which must be agreed upon before any proceedings are had before the court. Notice must then be given as provided in section 4269, C. O. S. 1921 (sec. 5933, O. S. 1931).

This section also provides that any person interested may remonstrate against the issuance of the bonds. The statute is silent as to grounds upon which the remonstrance may be based.

The statute does not specifically provide that such remonstrance shall be heard by the court. But in Curtis v. Board of Co. Com'rs, 33 Okla. 471, 126 P. 719, it was held that the statute contemplates that the remonstrance be heard before the district court, where the debt sought to be refunded exceeds the sum of $1,000.

In Faught v. City of Sapulpa, 145 Okla. 164, 292 P. 15, it is said that the only party before the court in a refunding proceeding is the municipality, and the only other party authorized to appear before that court is the taxpayer; that the creditor is not before the court and that there is no authority to bring such creditor before the court.

It is also said that "refunding bonds must stand or fall on the validity or invalidity of the indebtedness refunded * * * except in so far as the attack thereon is based on failure to comply with legislative requirement"; such attack being required to be made within the 30-day period of limitation provided by statute.

The validity of the indebtedness sought to be refunded may also be attacked by a taxpayer, as one who is interested, by remonstrance provided for in section 4269, supra. So far as we are advised, all the remonstrances heretofore coming before this court on appeal have been based upon alleged invalidity of the indebtedness sought to be funded or refunded, or upon questions of procedure leading up to issuance of such bonds. This appears to be the first case where the remonstrance was based upon alleged abuse of discretion of the municipal officers whose duty it is to issue the bonds.

So far as the legality of the indebtedness involved is concerned, there is no question raised. The court specifically found and held the two judgments against the board of education to be valid.

Section 4270, C. O. S. 1921 (sec. 5934, O. S. 1931), provides:

"On the day named in the notice referred to in the preceding section, the officers authorized to issue bonds under this article

shall go before the court named in said notice and make proof, to the satisfaction of the court, of the existence, character and amount of the outstanding legal indebtedness of said municipality. On such proof being made the court shall cause to be made, upon the records of the court, a statement and finding to that effect, and shall then, in open court, proceed to sign each bond to be issued, up to the amount of said indebtedness so proven and approved."

There is no requirement that proof shall be made to the effect that the rate of interest agreed upon is reasonable, or that it is the lowest rate that can be obtained. Of course, it must appear that such rate does not exceed 6 per cent. per annum. There is no requirement that the court shall inquire into the reasonablenss of the rate of interest the bonds are to bear. All the statute requires is a showing as to the "existence, character and amount of the outstanding legal indebtedness of said municipality." The court, upon the proof submitted, is required only to cause to be entered upon the record of the court a "statement and finding to that effect." By that is meant a finding and statement as to the "existence, character and amount of the outstanding legal indebtedness of said municipality."

The statute provides that the court "shall then, in open court, proceed to sign each bond to be issued up to the amount of indebtedness so proven and approved."

Section 4272, O. O. S. 1921 (sec. 5936, O. S. 1931), provides:

"When a refunding has been agreed upon, it shall be the duty of the proper officers to issue such bonds at the rate agreed upon, to the holder of such indebtedness, in the manner prescribed in this article; but no bonds shall be issued under this article until the proper evidence of the indebtedness for which the same are to be issued shall be delivered up for cancellation."

When the court has found that the board of education "is acting and has acted at all times in this case and with this matter honestly and in good faith," it is difficult to understand how it could be said that the board had abused its discretion in agreeing to a rate of interest within the rate provided by law.

It must be borne in mind that in no case is the creditor bound to agree to a refunding of the indebtedness held by him. In case of a judgment creditor, such as we have in this case, he may hold his judg-

ment and require it to be paid by tax levy as provided by law. On the other hand, no municipality is required by law to fund its indebtedness on any terms. It may refuse to do so, when requested, and stand upon other statutory methods of payment. The question then is one wholly for agreement between the creditor and the municipality acting through its officers authorized to issue bonds.

As stated before, no taxpayer should be permitted to control or attempt to control the discretion of the municipal officers in determining the question of whether or not the indebtedness should be funded, for the reason that it might be to the interest of one set of taxpayers to have the indebtedness paid off in the least possible time, and it might be to the interest of other taxpayers to have the time of payment extended over as long a period as possible. Now, who is to say what rate of interest, not in excess of 6 per cent. per annum, shall be agreed upon? It has been held that the municipality is without authority to sell refunding bonds, but must deliver them to the holder of the indebtedness. Honnold v. Board of Com'rs, 71 Okla. 71, 177 P. 71; News-Dispatch, etc., Co. v. Bd. of Com'rs, 130 Okla. 152, 266 P. 437, overruling Maryland Cas. Co. v. Bd. of Com'rs, 128 Okla. 58, 260 P. 1112.

This being the law, the allegation to the effect that the school board then had in its hands a "definite and binding offer to purchase a five-year issue of such bonds bearing interest at 5½ per cent. at par" could hardly be considered for the reason that no offer of the kind could be accepted and carried out by the board.

For the same reason the proposal made in writing by Kenneth Hudson to buy the proposed funding bonds in the approximate amount of $55,000 at par, with interest at 5 per cent., could not be considered, excepting going to show the prevailing rates of interest for such bonds at the time. But he could as safely have made an offer to buy at 2 per cent., for even that offer could not have been accepted.

The bonds, if issued at all, must have been issued bearing 6 per cent. For the court was powerless to make a contract for the parties. The judgment creditors not being before the court, and there being no authority to bring them in as parties, they could not have been required to accept bonds bearing a less rate of interest than they had agreed to accept.

Many cases are cited in the briefs of both parties as to what constitutes an abuse of discretion. An accurate general definition of that phrase is said to be difficult, if not impossible. Root v. Bingham, 26 S. D. 118. No such definition is required in this case. "Discretion," as applied to public functionaries, such as members of a board of education, refers to the power or right conferred upon them by law of acting officially in certain circumstances according to their best judgment and conscience, free from control by the judgment and conscience of others.

It was a matter for the best judgment and conscience of the members of the board of education in this case as to whether or not they would accept the proposal of the judgment creditors to accept funding bonds bearing 6 per cent. interest. The trial court found that they did accept said proposal honestly and in good faith.

It is generally held that courts will not entertain suits to contest the validity of acts which are within the discretion of municipal officers in the absence of fraud or bad faith. Courts as a rule are not concerned with the questions as to the wisdom or as to matters of judgment or policy. 44 C. J. 1379.

In this case there is little room for doubt under the evidence that had the refunding bonds been issued as proposed, and delivered to the judgment creditors as provided by law, and the Bank Commissioner, as he had agreed to do, sold the bonds so delivered to him to R. J. Edwards, Inc., that company would have stood to make a profit out of the transaction of from $6 000 to $7,500, or possibly more. That was apparently what the trial court was referring to in the judgment where he said: "At that rate (6 per cent.) it shows that a great profit would be made off of the taxpayer, and I feel it is the duty of the court to protect the taxpayers." The sentiment thus expressed is a noble one and is to be commended. But in the absence of any provision in the statute providing for the refunding, for the court to review the question of reasonableness or unreasonableness of the contract or agreement between the owners of the indebtedness and the board of education, we are unwilling to say that the trial court was justified in refusing to grant the application unless it be under the provision of the contract itself.

The proposal made by the judgment creditors says:

"* * * In view of the fact that president of your board of education has advised us that you are willing to issue funding bonds to take up these judgments, providing the district court of Carter county would authorize the same, this is to advise you that we, the owners of these judgments above mentioned, will accept funding bonds, bearing 6 (6%) per cent. interest, in the amount of fifty-five thousand, nine hundred and fifteen dollars and sixty cents ($55,915.60)."

And:

"In the event such bonds are not approved by the district court and the Attorney General, this agreement is null and void."

The acceptance of the proposal is:

"The above offer and agreement to fund the judgment indebtedness held by you is hereby accepted by a vote of the board of education, and we hereby agree to deliver bonds in an amount equal to the principal and interest on such principal up to September 1, 1934, and the costs."

While the decision of the trial court is not based upon the theory that the parties themselves had agreed to make their contract subject to the approval of the district court, and voidable if not approved in all respects, including the rate of interest agreed to be paid, we think, under the peculiar facts and circumstances, that the court was justified in denying the application under the plain provisions of the contract. In other words, the parties had agreed that if the district court did not, without any limitations as to reasons, approve the bonds, then the agreement was to be void.

The trial court refused to approve and gave as his reasons what he deemed to be an abuse of discretion on the part of the board of education. The matter was left, not under the law, but under the agreement of the parties to the decision of the court as to whether or not the bonds should be issued. The decision was against the approval of the bond issue, and that decision rendered the agreement to fund null and void.

The parties are bound by that provision of the contract, and the order of the court is affirmed.

McNEILL, C. J., and PHELPS, CORN, and GIBSON, JJ., concur. OSBORN, V. C. J., and BAYLESS, J., dissent. BUSBY and WELCH, JJ., absent.